# THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BENJAMIN FIELDS, Appellant.

First Department, November 12, 1991

### APPEARANCES OF COUNSEL

*Diane Cummings Hand* of counsel *(Philip L. Weinstein,* attorney), for appellant.

*Lisa H. Blitman* of counsel *(Diana Fabi* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

MILONAS J.

On August 3, 1989, police officers Rivera and Fahey were working in plain clothes, cruising the neighborhood of Washington Heights in an unmarked police vehicle, seeking to observe out-of-State vehicles coming into the neighborhood and their occupants buying narcotics. The two officers were part of a coordinated operation of the Manhattan North Narcotics Unit and the Tactical Narcotics Team known as Chariot 2, focusing on drug sales to out-of-State buyers in that area, near the George Washington Bridge, which afforded swift access to and from out-of-State locations. At approximately noon, Rivera observed defendant standing beside a blue Datsun with a North Carolina license plate, double parked in the middle of a residential block, across from 505 West 183rd Street. Rivera also observed defendant to be a white person in this largely Hispanic neighborhood and that defendant was looking up and down the block, acting nervously. Rivera circled the block and parked approximately 100 feet from the Datsun, to make further observations. For the next five minutes, defendant remained standing beside the double-parked Datsun, peering nervously up and down the street. At that point, a second white male, later identified as Jerry Painter, exited the 505 West 183rd Street building,

clutching a white plastic shopping bag to his rib cage. Painter walked quickly and directly to the double-parked Datsun, taking approximately five seconds to do so, during which time he looked up and down the block in a nervous manner. Although Rivera was unable to see through the bag, he observed the outlines of a square object of "a couple of pounds" through the bag, which, Rivera believed, based upon his narcotics training and experience, resembled in size and shape a kilogram of cocaine. Without exchanging any words, Painter and defendant immediately got into the car and drove off. Officers Rivera and Fahey followed in their unmarked car. The Datsun proceeded eastbound on 183rd Street, made a right turn onto southbound Amsterdam Avenue, and another right turn onto westbound 179th Street, consistent with heading directly to an entrance to the New Jersey-bound George Washington Bridge. In a statement subsequently given to the police, Painter admitted he became aware he was being followed, that someone in a vehicle behind him was talking into a radio; and defendant admitted he was aware this was a police vehicle while they were still on 183rd Street. Lieutenant Fahey did indeed radio for another unmarked police car to stop the Datsun. Plainclothes Officers Matheson and Salgado proceeded eastbound, against traffic on 179th Street, near St. Nicholas Avenue and attempted to stop the Datsun by blocking the street. Sergeant Matheson emerged from the unmarked car, with his police shield around his neck, and, as the hearing court found, without his gun drawn. The Datsun, however, swerved around this police vehicle and continued to proceed westbound on 179th Street. Officers Rivera and Fahey continued to follow the Datsun and were joined by two officers, Rehren and LaPort, in another unmarked vehicle. Two blocks further west on 179th Street, before the intersection with Broadway, the Datsun came to a halt due to traffic congestion. Defendant exited the car, carrying the white plastic shopping bag under his arm, and fled on foot. He was then pursued on foot by Rivera and another officer. Painter also attempted to exit the vehicle, but was grabbed by Officer Rehren arriving on the scene. In frisking Painter, in order to protect his personal safety, Rehren felt what he believed to be a gun in Painter's pants pocket, whereupon that officer removed a .38 Smith and Wesson revolver with five rounds of live ammunition. Officer Rivera, in chasing defendant, drew his gun and yelled, "stop police". Nonetheless, defendant continued running, turned left on Broadway, and one block

south, at 178th Street, ran around a parked bus and threw the white plastic shopping bag underneath the bus and thereupon continued his flight. Defendant was caught by Officer Rivera approximately 25 feet from the corner of Broadway and 178th Street. While defendant was detained by the other officer giving chase, Officer Rivera retrieved the white plastic bag from beneath the bus. The defendant was arrested after Officer Rivera opened the package, wrapped in green tape, within the plastic bag, and observed a mass of white powder. A thorough search of the blue Datsun, conducted later that day at a police staging area, disclosed two boxes of ammunition containing 75 live rounds in the glove compartment and two digital scales in the back of the car, underneath some clothing.

The hearing court, crediting the officers' testimony, denied the suppression motion. It found that the observations of a double-parked, out-of-State vehicle on a residential street, watched by a nervous guardian, who was then joined by a quick moving partner carrying a square-shaped object within a plastic bag, while not amounting to probable cause to believe a crime had been committed, did provide the experienced narcotics officers with an articulable reason to approach and inquire of defendant. The officers instead followed the blue Datsun. The unsuccessful attempt to stop the car was found not to be unjustified, as it was not undertaken intrusively, in that, for example, the police officer did not draw his gun, and indeed the police action failed to produce any contact with defendant at all, as the Datsun eluded the attempted stop. The hearing court found that, at this juncture, the police could reasonably conclude that the occupants of the vehicle were aware they were evading police officers, based upon Officer Matheson's display of his shield. This flight, coupled with the fact that, when the Datsun became caught in traffic, defendant fled carrying the same white plastic bag previously observed having been brought to the car by Painter, gave the police officers as much reasonable suspicion that criminal activity was afoot as one could have short of probable cause. Thus, the police had proper basis to pursue and detain defendant. Moreover, it was found defendant, in the course of the foot chase had sufficient time to make two turns in a deliberate and calculated effort to discard the white plastic bag containing the cocaine.

We agree with the hearing court that Officer Rivera's observations of defendant and Painter on 183rd Street pro-

vided a proper basis to approach and inquire of the pair, had the officers so chosen. There were objective, articulable grounds to warrant the police officers to seek explanatory information, without intruding upon defendant to the extent of seizing him *(People v De Bour,* 40 NY2d 210, 223; *People v Gonzalez,* 115 AD2d 73, 82, *affd* 68 NY2d 950). Such grounds may exist even though the officers were confronted only by facts susceptible of innocent interpretation *(People v Howard,* 50 NY2d 583, 590; *see also, People v De Bour, supra,* 40 NY2d, at 216). In this regard, we note that the outline of a square package containing a kilogram of cocaine within a plastic bag cannot be considered as distinctive as the outline of a gun through clothing *(see, People v Prochilo,* 41 NY2d 759). The officers, however, chose, or were forced by circumstance, to allow the pair to drive away. The prior observations justified the officers' actions in keeping the car under observation *(People v Sobotker,* 43 NY2d 559, 564; *People v Howard, supra,* 50 NY2d, at 592). While the car's turns were consistent with heading directly to the George Washington Bridge and thence out of the jurisdiction, given the layout of these streets and the fact that such turns were also consistent with numerous other destinations including midtown, it might be doubted whether this additional factor raised the officers' foundation to one of reasonable suspicion, sufficient to induce an ordinarily prudent and cautious individual under the circumstances to believe that criminal activity was at hand *(People v Cantor,* 36 NY2d 106, 112-113).

We need not, however, determine the legality of any intended police stop of defendant's vehicle or any restraint over defendant at this stage, as none was imposed *(see People v Harrison,* 57 NY2d 470, 475; *People v Leung,* 68 NY2d 734, 736). That the actual intrusion upon defendant's liberty at 179th Street and St. Nicholas Avenue was quite minimal and did not amount to a forcible stop is evident from the fact that the Datsun avoided the unmarked car and continued to proceed westbound. In fact, the Datsun stopped two blocks away without police intervention, when it was immobilized by traffic congestion. Defendant was not directed to remain in the car at that point *(see, People v Harrison, supra),* but rather immediately took flight with the white plastic bag, the object of initial suspicion.

In these circumstances, the flight of defendant on foot, clutching the white plastic bag, and abandoning the vehicle in

the midst of a congested urban intersection, gave rise, if it did not exist before, to reasonable suspicion on the part of the officers that defendant was engaged in criminal activity. This was sufficient predicate to pursue and forcibly detain defendant for investigatory purposes *(People v Hill,* 127 AD2d 144, *appeal dismissed* 70 NY2d 795; *People v Allen,* 141 AD2d 405, *affd* 73 NY2d 378).

Defendant's act of jettisoning the white plastic bag containing the kilogram of cocaine beneath the bus at 178th Street and Broadway in the course of this pursuit was a considered and calculated act undertaken to assist his effort to escape and to rid himself of incriminating evidence, independent of the earlier attempt by police to stop the car. Defendant had not only run more than a block in the course of this final chase on foot and made a detour around the bus, but prior thereto had known his car was being followed by police for approximately eight blocks, and left the car unattended when it became immobilized by traffic congestion. In the circumstances of this extended behavioral pattern, even if the attempted, unsuccessful, stop by the police back at 179th Street and St. Nicholas Avenue could be said to have been unjustified, defendant's act of discarding the bag at 178th Street and Broadway could hardly be characterized as a spontaneous response thereto, but rather was attenuated from the prior event *(People v Boodle,* 47 NY2d 398, 403-404; *People v Leung, supra,* 68 NY2d, at 736-737). Therefore, the officers acted lawfully in detaining defendant while proceeding to examine the contents of the abandoned plastic bag *(People v Hogya,* 80 AD2d 621, *appeal dismissed* 56 NY2d 602). Upon the discovery of cocaine therein, there was probable cause to arrest defendant.

Accordingly, the judgment of the Supreme Court, New York County (Edward McLaughlin, J., at suppression hearing and plea; Edwin Torres, J., at sentence), rendered January 10, 1990, which convicted defendant of criminal possession of a controlled substance in the second degree and imposed a term of six years to life imprisonment should be affirmed.

CARRO, J. P., ELLERIN, ROSS and ASCH, JJ., concur.

Judgment, Supreme Court, New York County, rendered January 10, 1990, affirmed.