OPINION OF THE COURT
Smith, J.
The primary issue on this appeal is whether the court erred in precluding expert testimony that medical malpractice was the supervening cause of the victim’s death. We conclude that no prejudicial error was committed and that the conviction should not be overturned.
On Sunday, January 18, 1987, the defendant, then a freshman in engineering at the University of Rochester, returned to the campus after a vacation as did other students. During the course of the evening, he drank heavily and, at the time of the criminal incidents, he was under the influence of alcohol. At some point during the evening, the defendant, who was over six-feet tall and weighed more than 200 pounds, drew a knife and stabbed three people before he was subdued by the campus security personnel. Two of the persons survived al *725 though they received cuts which required stitching. One, Gary Kramer, received wounds to his stomach, buttocks and hand. The other, Rana Mattreja, received wounds to his stomach. The third person, Darrell Tornay, died about a month after he was stabbed.
It was the defendant’s contention that Tornay’s death was caused not by the stab wound but by medical malpractice in the treatment of the wound. Much of the evidence at the trial consisted of medical testimony. Tornay had received a single stab wound to his abdomen, located in the upper right quadrant below the rib cage but above the belly button. An exploratory operation (laparotomy) was performed by Dr. Jerry Svoboda. He testified that he found, among other things, that the front and back of the intestine and a blood vessel had been cut. He did not, however, perform a Kocher maneuver, a procedure by which organs behind the abdominal cavity are brought out of that area so they can be examined. Because this was not done, a two-millimeter hole in the duodenum was not found. In the weeks following the January 19 operation, Tornay improved slowly. At times, however, there were signs of an infection including a fever. Nevertheless, on the morning of January 31, he was released. That evening Tornay became ill and vomited. He vomited several more times in the next few days and was returned to the hospital on February 2. Over the course of the next two weeks, he was treated for an infection. On February 19, a second operation was performed during which the wound to the duodenum was discovered. During and immediately following the second operation, Tor-nay experienced increasing difficulty and he died around 11:45 p.m. on February 19.
The medical examiner, Dr. Lorraine Roth-Mayo, stated that the cause of death was heart failure caused by pulmonary edema. Dr. Roth-Mayo also testified that the death was related to the stab wound and related to infections resulting from the stab wound.
Dr. Cyril Wecht, a defense expert, gave some testimony in the presence of the jury and was also questioned outside of the jury’s presence. Subsequently, all of his testimony was stricken and the jury instructed to disregard it. In the presence of the jury the doctor testified that the cause of death was Adult Respiratory Distress Syndrome (ARDS), a condition in which the lungs fill with fluid and do not function properly so that oxygen does not get to the brain and heart. The ARDS *726 was produced by an infection in the blood stream or sepsis and a reaction to a drug given to combat the infection, Cefizox. Outside of the jury’s presence, Dr. Wecht stated that the wound to the duodenum should have been discovered and that the failure to give Tornay adequate care was a supervening cause of death.
A second expert witness for the defense was Dr. William Stahl. He testified at length about the failure to adequately treat Tornay. According to his testimony the acts of negligence included failure to undertake the Kocher procedure, the release of Tornay from the hospital on January 31, failure to give appropriate tests, failure to replace a drainage tube which had fallen out and failure to perform the second operation prior to February 19. In responding to a question as to what had happened during the second operation, Dr. Stahl testified that at the close of the operation and after being moved to the recovery room, Tornay was "in severe pulmonary edema.” In partial response as to the meaning of pulmonary edema, the doctor stated the following:
"And, in fact, he died because of the inability to ventilate him. He died of asphyxia of oxygen lack because the pulmonary edema could not be overcome even with all the treatments that were done.”
Objections were then made and sustained to several questions dealing with the cause of death.
It is the defendant’s claim that the preclusion of the testimony of Dr. Wecht and the limitation of the testimony of Dr. Stahl were prejudicial and require a new trial. The People contend that no reversible error was committed.
The legal standard of causation applicable here was set forth in People v Kane (213 NY 260). There, this Court held that even though improper medical assistance may have contributed to a death, a defendant whose assault had also been a cause of the death could be held criminally liable. In that case, a pregnant woman was shot twice by the defendant. As the result, she suffered a miscarriage following which septic peritonitis set in. On appeal from defendant’s murder conviction, this Court stated that where the improper medical treatment was the sole cause of death, a defendant would not be liable for murder:
"If a felonious assault is operative as a cause of death, the causal co-operation of erroneous surgi *727 cal or medical treatment does not relieve the assailant from liability for the homicide. It is only where the death is solely attributable to the secondary agency, and not at all induced by the primary one, that its intervention constitutes a defense” (213 NY, at 270).
The standard announced in People v Kane was applied more recently in People v Stewart (40 NY2d 692). In Stewart, this Court reduced a manslaughter conviction to assault in the first degree when the evidence did not clearly establish a knife wound as the cause of death. In fact, the knife wound to the abdomen had been surgically repaired when the doctors noticed "an incarcerated hernia.” During the attempt to correct the hernia, the patient went into cardiac arrest and he died a month later. There was expert testimony that the patient would have survived the knife wound if the hernia operation had not been attempted.
Defendant’s reliance on People v Eulo (63 NY2d 341) is misplaced. In Eulo, this Court affirmed the separate convictions of two men for manslaughter in the first degree. In both cases, vital organs had been removed from the patients after a cessation of brain function but before the heart had stopped beating. The legal issue was not the cause of death but "what constitutes a person’s death, the time at which criminal liability for a homicide would attach” (People v Eulo, supra, at 348). The defendants contended that death had not occurred when the organs were removed and that death was due to the negligence of the doctors. This Court rejected the argument and held that "brain-based criteria” could be used to define death (People v Eulo, supra, at 355).
Contrary to the contentions of the defendant herein, Eulo did not change the standard enunciated in Kane (supra). As the Appellate Division in this case correctly perceived, dictum in Eulo which defendant urges should be construed as establishing a negligence/gross negligence dichotomy on the issue of causation (see, People v Eulo, supra, at 359) was not intended to alter the Kane rule. Indeed, the passage defendant relies upon cites Kane with approval, and our decision in Matter of Anthony M. (63 NY2d 270, 280), decided the same day as Eulo, makes evident the continuing vitality of Kane. The test for relief from criminal responsibility for a death applicable to the facts of this case remains whether the death can be attributed solely to the negligent medical treatment.
*728 Consequently, while it may have been error to exclude all of the testimony of Dr. Wecht, under the applicable legal standards no showing of prejudice was made.
We have considered the defendant’s other points and find them to be without merit.
Accordingly, the order of the Appellate Division should be affirmed.
Acting Chief Judge Simons and Judges Kaye, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed.