[—— NYS2d ——]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
RAFAEL SIERRA, Appellant.

First Department, May 27, 1993

## APPEARANCES OF COUNSEL

*Edward S. Graves* of counsel *(Philip L. Weinstein,* attorney), for appellant.

*James J. Troy* of counsel *(David Joseph Mudd* with him on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for respondent.

## OPINION OF THE COURT

Ross, J.

Once again we are called on to evaluate the propriety of police officers' conduct in their approach, pursuit and arrest of an individual who they suspected was involved in a developing drug transaction. The issue in this case is presented in the context of a motion to suppress physical evidence sought to be introduced by the People at trial. The defendant originally moved to suppress any physical evidence seized from his person. Counsel for the defendant alleged that defendant was merely standing on a street corner and that the arrest and search were not supported by probable cause. It was also maintained by the defendant that the police alleged that the narcotics in question were recovered from the defendant's person. The People alleged that the narcotics were recovered from the ground where they had been thrown by the defendant and that it was not the People's intention to introduce physical evidence recovered from the defendant's person or from any other location in which the defendant had a privacy interest. The trial court denied the defendant's motion to suppress the physical evidence without a hearing but provided that defendant could renew the motion upon papers containing an affidavit demonstrating that defendant had a proprietary interest in the evidence which was the subject of the suppression motion. Defendant did not renew the motion and was thereafter convicted, upon a jury verdict, of criminal possession of a controlled substance in the third degree and sentenced to 3 to 9 years in prison. Judgment was rendered on May 3, 1990. This Court held the appeal from that judgment in abeyance, reversed the order denying suppression and remanded the matter with instructions to hold a hearing upon

defendant's suppression motion *(People v Sierra,* 179 AD2d 601, *lv dismissed* 79 NY2d 1054). We now affirm the trial court's denial of suppression rendered after the hearing on remand and affirm the conviction.

At the suppression hearing the arresting officer, Alberto Acevedo, testified that he and his partner Officer Edwin Sanchez were in uniform, patrolling in a marked police car, at approximately 2:00 P.M., on October 9, 1989, in the Washington Heights section of upper Manhattan, when they saw a Jeep with New Jersey license plates parked at the northeast corner of the intersection of Broadway and West 164th Street. Officer Acevedo, who had been assigned to the 34th Precinct covering the Washington Heights area for the preceding 3½ years, stated that the area of Washington Heights where he and his partner were patrolling was known for its high volume of drug activity and specifically as a location where out-of-State buyers, particularly individuals from New Jersey, would buy drugs *(see, People v Fields,* 171 AD2d 244, *lv denied* 79 NY2d 1000).

As Acevedo and Sanchez approached the intersection, they observed a Caucasian male leave the vehicle and walk toward the defendant who was calling to the Jeep passenger "over here, over here". The officer stated that at that point he believed that the defendant was directing the Jeep passenger to a location where he could purchase drugs. The defendant's back was to the officers, consequently he did not see the officers as they approached in their car. However, the Jeep passenger who initially walked towards the defendant saw the patrol car and immediately left the corner. The defendant then looked back at the officers and immediately reached into his jacket. Officer Acevedo called to the defendant and asked him to come over to the police car. The defendant continued backing away from the officers' vehicle while still reaching into his jacket. Defendant was then told to stop and remain where he was. Instead the defendant fled.

Officer Acevedo pursued the defendant eastbound on West 164th Street toward St. Nicholas Avenue and apprehended him after he ran about 100 feet down West 164th Street. During the flight defendant removed a paper bag from his jacket and threw it onto a pile of garbage bags left near the curb. Acevedo recovered the discarded bag and found that it contained tinfoil packets of what appeared to be cocaine. The defendant was then arrested.

The record indicates that the officers had a credible belief that a crime was about to occur. The defendant's otherwise unexplained flight upon the lawful approach of police officers was an escalating factor, which when coupled with the officers' prior belief that criminal activity was afoot was sufficient to provide the officers with justification to pursue and detain the fleeing individual. These circumstances also provided the officers with the authority to recover and inspect whatever items were discarded by the individual during the chase *(see, e.g., People v Leung,* 68 NY2d 734; *People v Fields,* 171 AD2d 244, *lv denied* 79 NY2d 1000, *supra; People v Painter,* 181 AD2d 497, *lv denied* 79 NY2d 1052; *People v Jones,* 118 AD2d 86, *affd* 69 NY2d 853; *and see, People v Boodle,* 47 NY2d 398, 404, *cert denied* 444 US 969; *People v Rivera,* 175 AD2d 78, *lv denied* 78 NY2d 1129).* This analysis comports with the reality of these rapidly escalating street encounters. Holding to the contrary merely serves to frustrate effective law enforcement, without providing any greater level of protection to the citizenry against unlawful intrusions upon their privacy.

In *People v De Bour* (40 NY2d 210), the Court set out a general standard by which to evaluate whether or not a particular search or seizure is reasonable. The Court stated that "we must consider first whether or not the police action was justified in its inception and secondly whether or not that action was reasonably related in scope to the circumstances which rendered its initiation permissible" (40 NY2d, *supra,* at 215). The more specific four-tier analysis set out later in the opinion has been widely employed by both the Bench and Bar in lieu of the more general standard.

Similarly, the strict application by some of the principle, stated in *People v Howard* (50 NY2d 583), that when an individual flees from an officer making a lawful inquiry the officer may not, without probable cause, pursue the individual but may only unobtrusively observe the individual, has generated much confusion by fostering an unrealistic approach to rapidly escalating street encounters *(see, e.g., People v Elliot,* 162 AD2d 609, *lv denied* 76 NY2d 856; *People v Rodriguez,* 178 AD2d 381).*

The Court in *People v Leung (supra)* recalled the general standard stated in *People v De Bour (supra),* and concluded that the officers' prior observation of defendant passing a small brown envelope of the type commonly used in the drug trade, coupled with defendant's immediate flight, justified the

officers' pursuit. There, a reasonable suspicion of criminality, as opposed to probable cause, was held to provide a sufficient justification for pursuit and apprehension. Similar reasoning was used to find that the pursuit of a fleeing individual by officers was justified in *People v Jones* (69 NY2d 853, *affg* 118 AD2d 86, *supra)*. There officers on patrol in the early morning hours received a radio call of two Hispanic men stripping a car. They arrived at the scene and observed the defendant, who did not match any description received, running with a skirt in his hand. The officers pursued and forcibly stopped the defendant after he momentarily stopped when the officers called to him, but then dropped the skirt and ran.

While it may have been generally agreed, despite the language of *People v Howard (supra),* that a reasonable suspicion as opposed to probable cause suffices to justify police pursuit and detention of a fleeing individual, Judges and lawyers still disagree, when confronted with specific cases, about whether the circumstances give rise to sufficient suspicion to justify pursuit. For example in *People v Rivera* (175 AD2d 78, 79, *lv denied* 78 NY2d 1129, *supra),* this Court found that an officer's observation of " 'hand motions' " between the defendant and another man, which the officer believed was a drug transaction, coupled with the defendant's immediate flight upon the officer's approach justified the subsequent pursuit. Further, the Court found that the defendant's attempt to discard the heroin by throwing it into a dumpster during the pursuit was an intentional act done in reaction to a lawful police pursuit. However, in *People v Holmes* (181 AD2d 27, *lv granted* 80 NY2d 930), this Court concluded that police officers' observation of the defendant, in a known drug location, with an unidentifiable bulge in the pocket of his jacket coupled with the defendant's flight upon the officers' attempt to question him from their police car, did not justify pursuit, despite the fact that no other member of the group he was standing with fled upon the officers' approach.

As noted in *People v Madera* (189 AD2d 462, 468 [Ross, J., dissenting]), the confusion which surrounds the determination of whether a particular pursuit and detention of a fleeing individual by police officers is lawful has been resolved to a degree by a very recent Court of Appeals case. In *People v Martinez* (80 NY2d 444), a Mount Vernon city police officer, Police Officer Radzinsky, and his partner, patrolling a high-crime area in a marked police car, saw the defendant reach up and remove a metal "Hide-a-Key" box from the steel grate

of a store window. Officer Radzinsky was aware that the area was known for its drug activity, as he had participated in 50 drug arrests in the area. He also knew from his training and experience that "Hide-a-Key" boxes were often used by drug dealers to hide drugs.

The officers, who were dressed in plain clothes with Officer Radzinsky displaying his badge, exited their car. There was also evidence that the defendant knew Officer Radzinsky was a police officer, since defendant was present when the officer arrested a friend of his. As the officers approached, the defendant turned and ran into a nearby grocery store. The officers chased him into the store and saw him hand the box off to his codefendant, who in turn went to the rear of the store and threw the box down to the floor. Officer Radzinsky recovered the box and found that it contained 17 vials of crack cocaine.

In an opinion by Acting Chief Judge Simons, the Court held the pursuit, detention, and recovery of the contraband in this case was proper. The Court recognized that uneven application of the law in cases when police forcibly stop or pursue an individual based upon a reasonable suspicion of criminal activity, has resulted because of language found in *People v Howard (supra)*. It attempted to put the matter to rest as follows:

"Though some have interpreted *People v Howard* otherwise, the rule is, and was before the *Howard* decision, that the objective evidence necessary to support a stop and seizure short of an arrest is reasonable suspicion *(People v De Bour, supra; People v Leung, supra)*.

"Reasonable suspicion represents that 'quantum of knowledge sufficient to induce an ordinarily prudent and cautious [person] under the circumstances to believe criminal activity is at hand' *(see, People v Cantor,* 36 NY2d 106, 112-113) * * *

"In the case before us, there is support in the record for the finding below that the police officers had a reasonable suspicion of criminal activity to justify their pursuit of defendant. There was evidence that defendant was seen standing at night in an area known for an excessive amount of drug activity, he was removing a device known to the officers to be used for hiding drug stashes, and he fled immediately upon observing the approaching police. Defendant had a right to refuse to respond to a police inquiry and his flight when the officers approached could not, in and of itself, create a reasonable suspicion of criminal activity *(see, People v May,* 80 NY2d 725,

*supra* [decided today]). However, defendant's flight may be considered in conjunction with other attendant circumstances, namely, the time, the location, and the fact that defendant was seen removing an instrument known to police to be used in concealing drugs. 'When coupled with the defendant's immediate flight upon the officer's approach, the [removal of the Hide-a-Key box] in this narcotics-prone neighborhood establishes the necessary reasonable suspicion * * * such that pursuit by the officers was justified' *(see, People v Leung,* 68 NY2d, at 736, *supra).*

"Inasmuch as the pursuit of defendant was justified, his abandonment of the Hide-a-Key box was not precipitated by any illegal police conduct *(see, People v Leung,* 68 NY2d 736-737, *supra; cf., People v Boodle,* 47 NY2d 398, 402, *cert denied* 444 US 969). Once defendant abandoned the box, he lost his right to object to the opening of the box and the drugs discovered upon opening the box provided the police with probable cause to arrest him. Thus, defendant's motion to suppress evidence was properly denied." *(People v Martinez,* 80 NY2d, *supra,* at 448-449.)

In view of the Court's pronouncements in *People v Martinez (supra),* affirmance of the denial of suppression in this case is clear. Here, the officers were confronted with a similar situation as that presented in *People v Fields* (171 AD2d 244, *lv denied* 79 NY2d 1000, *supra),* where this Court affirmed the denial of suppression. In *People v Fields (supra,* at 245), the scene with which the officers were confronted was set forth by this Court as follows: "On August 3, 1989, police officers Rivera and Fahey were working in plain clothes, cruising the neighborhood of Washington Heights in an unmarked police vehicle, seeking to observe out-of-State vehicles coming into the neighborhood and their occupants buying narcotics. The two officers were part of a coordinated operation of the Manhattan North Narcotics Unit and the Tactical Narcotics Team known as Chariot 2, focusing on drug sales to out-of-State buyers in that area, near the George Washington Bridge, which afforded swift access to and from out-of-State locations. At approximately noon, Rivera observed defendant standing beside a blue Datsun with a North Carolina license plate, double parked in the middle of a residential block, across from 505 West 183rd Street. Rivera also observed defendant to be a white person in this largely Hispanic neighborhood and that defendant was looking up and down the block, acting nervously."

This Court concluded that the above-described circumstances, coupled with the officers' observation of another individual exiting a nearby building and entering the car clutching a white square-shaped plastic bag to his rib cage, "provided a proper basis to approach and inquire of the pair, had the officers so chosen." (171 AD2d, *supra,* at 247-248.) It was also concluded that the officers were justified in following the individuals' car to continue their surveillance, pursuing the individuals when they fled upon discovering that they were being followed and recovering the plastic bag containing cocaine which was discarded by the defendants during the chase. In the case at bar, the prior observations of the experienced officers in the Washington Heights area coupled with the defendant's immediate flight upon their approach and initial nonthreatening request, justified the pursuit and apprehension of the defendant *(People v Martinez, supra; People v Fields, supra).* Since the pursuit of the defendant was justified, his abandonment of the bag containing the cocaine was not precipitated by any illegal police conduct; therefore, suppression was properly denied *(People v Martinez, supra; People v Leung, supra; People v Boodle,* 47 NY2d 398, 402, *cert denied* 444 US 969, *supra).*

While the reasons for affirmance of the denial of suppression in this case should be abundantly clear from the above, it cannot be overemphasized that the majority's determination in this case was based on its independent consideration of the numerous factors that necessarily come into play when police-civilian encounters are analyzed. The dissenter's perception that the majority's determination is based primarily upon one factor—i.e., the ethnicity of the would-be buyer and the defendant—to the exclusion of the various other attendant circumstances, is both narrow and unjustified. It could not be more obvious that the more significant factors in the majority's analysis were the location, the out-of-State registration of the Jeep, the reaction of the Jeep passenger upon seeing the police vehicle, the initial reaction of the defendant, and, the final escalating factor of the defendant's flight. All of these factors combined with the prior knowledge and experience of Officers Acevedo and Sanchez justified the approach, pursuit and apprehension of the defendant. Apparently, the facts that, (1) Officer Acevedo had spent 3½ years patrolling the drug-prone area prior to the incident and, (2) that the police department had, just a few months before this incident, instituted a special police operation specifically targeting narcotics sales to out-of-State individuals in the Washington Heights

area *(see, People v Fields, supra,* at 245),* were not considered relevant by the dissent.

Contrary to the dissent's perception, the reputation of the Washington Heights area as a location where out-of-State buyers purchase drugs was at the time of defendant's arrest, and still is, widely known. In fact, the continuing drug problem in Washington Heights has resulted in so many narcotics cases appearing on this Court's calendar, that one may probably take judicial notice of the fact that the area is a veritable narcotics supermarket. As recently as April 1993, a massive assault on the problem was again launched by the police department and resulted in a large number of arrests within a relatively short period of time, in the very same area involved herein *(see, Cops in booty-ful display of drug-bust cars,* New York Daily News, Apr. 30, 1993, at 12).

This deliberation would have been more productive had the dissent taken issue with the legal issues or the majority's interpretation of specific cases, rather than with the perceived motivations of the hearing court which it seeks to ascribe to the majority herein. The hearing court's disposition of the suppression motion was affirmed for the reasons stated by the majority in its opinion. If we sought to endorse the language used and all of the views expressed by the hearing court no opinion would have been necessary. The existing law is not what is unsatisfactory, it is the selective application of the law and selective use of facts, to achieve a desired result or to emphasize a particular philosophy, that is inappropriate.

We have examined the other issues raised by defendant on this appeal, and find them to be without merit.

Accordingly, the judgment of Supreme Court, New York County (Budd G. Goodman, J., at summary denial of motion; John A.K. Bradley, J., at suppression hearing), rendered May 3, 1990 by which defendant was convicted, after a jury trial, of criminal possession of a controlled substance in the third degree and sentenced to an indeterminate term of 3 to 9 years in prison is affirmed.

ROSENBERGER, J. P. (dissenting). The majority today affirm a judgment, finding no fault with an order, denying suppression, based upon the trial court's finding that "this is quite patently

---

* The events in *People v Fields (supra),* in which the arresting officers were members of a Tactical Narcotics Team operation concentrating in Washington Heights occurred on August 3, 1989. The arrest in this case took place on October 9, 1989.

a narcotic transaction with a New Jersey vehicle and a white man approaches a hispanic male". I would reverse. No case cited in their opinion has found "a credible belief that a crime was about to occur" based upon so little: two men of different ethnicity, one of whom drove a car with a New Jersey license plate, approaching each other in Washington Heights, a drug-prone area.

In *People v Martinez* (80 NY2d 444), relied upon by the majority, reasonable suspicion of criminal activity depended upon the defendant's removing from a concealed location, in an area known for its excessive drug activity, late at night, a device known to be commonly used to conceal drugs.

In *People v Fields* (171 AD2d 244), relied upon by the majority, this Court found that the reasonable suspicion of criminal activity arose when the defendant abandoned his vehicle in the midst of a congested urban intersection, fleeing on foot, while still clutching a white plastic bag which had the outlines of a square object which the police officer believed, based upon his narcotics training and experience, resembled in size and shape a kilogram of cocaine. The portion of this Court's opinion quoted by the majority, led this Court to conclude that, at that point the officers had only "a proper basis to approach and inquire" *(supra,* at 248).

The officers here may well have had a right to inquire. They did not, however, have more. The portion of the Court's decision in *People v Martinez (supra),* quoted at length by the majority, is indeed instructive. The Court stated *(supra,* at 448):

"that the objective evidence necessary to support a stop and seizure short of an arrest is reasonable suspicion [citations omitted].

"Reasonable suspicion represents that 'quantum of knowledge sufficient to induce an ordinarily prudent and cautious [person] under the circumstances to believe criminal activity is at hand' [citation omitted] * * *

"Defendant had a right to refuse to respond to a police inquiry and his flight when the officers approached could not, in and of itself, create a reasonable suspicion of criminal activity *(see, People v May,* 80 NY2d 725, *supra* [decided today]). However, defendant's flight may be considered in conjunction with other attendant circumstances, namely, the time, the location, and the fact that defendant was seen removing an instrument known to the police to be used in concealing drugs."

In this case, considering the same factors leads to the conclusion that the police pursuit of the defendant was unwarranted. The time was approximately 2 o'clock in the afternoon of an October day. The location, Broadway at the corner of West 164th Street is described as a drug-prone area. The third factor here is "a New Jersey vehicle and a white man approaches a hispanic male". There were no drug vials, glassine envelopes, or other packages or articles typically containing drugs observed. There was no talk of drugs or code words for drugs. There was no money being exchanged nor hand motions indicative of an exchange of money or drugs. The defendant was not seen to engage in any transaction with any other person. The police officer testified that although he had passed that location many times before, he had never seen the defendant. An "ordinarily prudent and cautious person" would not, in these circumstances, be induced to believe that criminal activity was at hand.

The majority opinion states that I found two additional facts not to be relevant. Neither of them in any way affect this case. One of these was that the police officer who testified had been assigned to the 34th Precinct, an area which, he testified extends from 155th Street to 225th Street bordering the Bronx, as a uniformed officer for approximately 3½ years. This is hardly unusual, or particularly significant. The second is that the police department had a special operation targeting narcotics sales to out-of-State residents. This "fact" appears nowhere in the record before the motion court or before our Court in this case. It was not referred to in brief or argument. That operation was part of a different command, not the 34th Precinct. The officers in this case were not assigned to that operation, and there is no indication that they had ever heard of it. The majority are thus correct when they state that I did not find these "facts" relevant in the context of this case. An article from the New York Daily News relating occurrences of April 29, 1993 is similarly irrelevant to analysis of the events of October 9, 1989.

The majority here as did the dissent in *People v Madera* (189 AD2d 462, 468), seem dissatisfied with existing law as explained by the Court of Appeals. This appears from the following language in the majority's opinion: "Similarly, the strict application by some of the principle, stated in *People v Howard* (50 NY2d 583), that when an individual flees from an officer making a lawful inquiry the officer may not, without probable cause, pursue the individual but may only unobtru-

sively observe the individual, has generated much confusion by fostering an unrealistic approach to rapidly escalating street encounters."

As the majority, speaking through Presiding Justice Murphy, in *People v Madera (supra,* at 466) observed: "The suggestion that longstanding and recently unanimously reaffirmed law be rejected is not simply extraordinary from a precedential standpoint, but profoundly troublesome from a legal one * * *. The dissenter's notion that the police may pursue and seize whomever they may approach, would necessarily validate seizures in situations such as the one at bar in which although there is perhaps some basis for inquiry, there exists no reason to suspect a particular person of crime, indeed, in which it has not even been reliably ascertained that any crime has been committed. To permit the seizure of a person, simply because that person asserts his or her undoubted right to be left alone is not merely violative of this State's common law, but its statutes, its Constitution, and, indeed, the Federal Constitution. Under all of these authorities the absolute minimum predicate required to support the seizure of a civilian is a reasonable suspicion that the person to be seized has committed or is about to commit a crime; it is not, as the dissenter would hold, invariably sufficient that police inquiry however legitimate has been avoided."

A more troubling element is also present in this case. It is undeniable that a salient factor in the trial court's denial of the motion to suppress was the Hispanic ethnicity of the defendant, juxtaposed with the "white" ethnicity of the unknown and unpursued driver. Making a determination based upon such a factor is, in our society, simply unacceptable.

WALLACH and RUBIN, JJ., concur with Ross, J.; ROSENBERGER, J. P., dissents in a separate opinion.

Judgment, Supreme Court, New York County, rendered May 3, 1990, which, after a jury trial, convicted defendant of criminal possession of a controlled substance in the third degree, and sentenced him to an indeterminate term of imprisonment of 3 to 9 years, affirmed.