Bellacosa, J.
(dissenting). Respectfully dissenting, I vote to reverse and reinstate the conviction that rests on defendant’s plea of guilty to possession of drugs.
Police officers, patrolling in a car in the afternoon of December 23, 1989 near a "known narcotics location” in upper Manhattan, observed defendant with several other persons. One officer recognized several of the men as having been previously arrested for drug transactions at the same location. The officers noticed a "large bulge” in the right pocket of defendant’s leather jacket. As the patrol car approached, defendant began to back off from the group and then turned and walked away. The officers stopped the patrol car, and from inside the vehicle one officer called out to defendant, requesting him to come over. Defendant reacted by turning and moving towards the car. As the officer started to get out of the car, defendant turned again and ran in the opposite direction. The officers followed, one on foot and one in the car. The officer on foot, running about 10 feet behind defendant, never lost sight of him in the few minutes that transpired, and saw him throw a plastic bag containing 45 vials of crack cocaine through a chain link fence into a courtyard. Defendant was apprehended and charged with possession of the discarded drugs.
Supreme Court denied defendant’s suppression motion, finding that "the activities of the defendant escalated” such that "[t]he encounter * * * was proper as * * * initiated and the pursuit was justified”. Defendant’s toss of the bag during his departure from the scene was ruled an abandonment. The Appellate Division reversed, ironically concluding that the defendant’s conduct was lawful, but the police activity was unlawful.
Law has a tendency to gravitate towards levels of intellectual sophistication and subtlety, and then sometimes spins out to a realm of unreality in pursuit of a quixotic and illusory "right 'to be let alone’ ” (majority mem, at 1058). Something as elemental as running away from a police officer, after a concededly lawful approach and inquiry, should not be rendered per se legally meaningless, because the law then is propelled beyond reasonable comprehension or acceptance. The new right is then perceived and properly dubbed as a "right to run away”.
*1060 My particular frustration in this case stems in part from my total agreement with the Court that flight, together with "other specific circumstances indicating that the suspect may be engaged in criminal activity” (as occurred in this case to the experienced and seasoned eyes of the particular officers), provides a reasonable suspicion of criminality sufficient to justify pursuit (majority mem, at 1058). The other specific circumstances that should be considered with flight occur before, during and after a lawful police-civilian encounter. All the res gestae of the particular circumstance should govern. Yet, in diametric contrast, the Court allows the facts observed by the police and the immediate and continuing reactive conduct of defendant to a lawful approach and inquiry to be automatically thrown out the courthouse door, neutralizing the confluence of circumstances as "equivocal”.
That the Court has lost its analytical compass in this regard is evidenced by its apparent endorsement of the Appellate Division’s extrapolating a per se flight corollary out of the De Bour — Hollman tiers of authorized police activity. Every individual surely has a right to refuse to cooperate with the police on a street inquiry based purely on suspicion or hunch. However, to then leap to the proposition that flight can be given no legal significance whatsoever in an encounter based on an objective and credible reason is a major misdirection in these ever-proliferating cases. While it is supposed to be well established that flight can have some associated legal significance, that is plainly not the way the rules are being applied in fact-finding and reviewing courts (see, e.g., People v Madera, 189 AD2d 462, 468 [Ross, J., dissenting], lv granted 81 NY2d 1022; cf, also, People v Oeller, 191 AD2d 355, 359 [Rubin, J., dissenting], lv granted 81 NY2d 1022; People v Sierra, 190 AD2d 202; and see the cases cited in the respective majority and dissenting opinions of those recent cases at the Appellate Division).
People v Matienzo (81 NY2d 778) offers valuable guidance. Police officers approached defendant based upon an objective credible reason. This Court, in upholding the lawfulness of the police conduct, added that "[i]n the circumstances presented, defendant’s flight furnished reasonable suspicion that he had committed or was about to commit a crime such that pursuit by the officers was justified” (id., at 780). The instant case, endorsing the Appellate Division’s rejection of that sensible parallel under our extensively developed rules, belies and confuses the dynamics surrounding flight from police-civilian *1061 Street engagements by employing an analysis which is of an artificial and straitjacketed temporal sequential nature (contrast sharply, People v Martinez, 80 NY2d 444, 448). The courts are instructed to examine silent stills, while the police must act in talking, fast-moving, modern action scenes.
This case — and still others on appeal — illustrates once again many distressing questions as to what the police are supposed to do or even say in performing their jobs in these circumstances. I am unsure whether a police officer may persist in the effort to speak to someone, or may walk along, trot along, or just keep a suddenly fleeing person under "unobtrusive” surveillance in these street sequences. Presumably the rules, as applied, do not relegate the officers to the barefaced choice of meekly turning the other way. The Chaplinesque imagery of drug transactors running one way and the cops the other way dramatizes the majority’s decrying of the "unfortunate reality” that New York City suffers many " 'high crime neighborhoods’ ” and " 'narcotics-prone locations’ ” (majority mem, at 1058). What the Court fails to recognize is that rulings like this contribute to the environment and culture that spreads that "reality”. The bottom line is that this is a case about experienced police officers acting in a particular, known locale with respect to an all-too-typical narcotics transaction circumstance with known actors.
Judges at every court level are encountering obvious difficulty in deciding, with the benefit of reflection, what is lawful versus unlawful or relevant versus irrelevant or equivocal versus indicative of criminality. It is thus beyond my comprehension how anyone can reasonably expect the recent cascade of precedents from all courts, including this one, to guide the police in their instantaneous on-the-street decisions and actions relating to flight and pursuit.
Under the circumstances and pertinent rules, this Court should reverse, reinstate the guilty plea and remit this case to the Appellate Division to apply the correct dynamic criteria to decide this case. The per se flight blinder that continues to be interposed here and in countless other cases and street encounters is disconcerting.
Chief Judge Kaye and Judges Simons, Titone, Hancock, Jr., and Smith concur; Judge Bellacosa dissents and votes to reverse in an opinion.
Order affirmed in a memorandum.