■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JESSE SNOW, Appellant. [912 NYS2d 334]—

Mercure, J. Appeal from a judgment of the County Court of Madison County (McDermott, J.), rendered November 21, 2008, convicting defendant following a nonjury trial of the crime of manslaughter in the first degree.

On February 6, 2008, defendant called 911 at approximately 9:00 P.M. to report that the victim, the three-year-old son of his fiancée, had fallen down a flight of stairs and hit his head. Defendant had been caring for the child, along with his infant brother, while the child's mother was working. The child was rushed to the hospital where the emergency room physician noted grid-like markings indicating trauma to the abdomen, in addition to evidence of a severe brain injury, raising concerns that the child had been abused. A CT scan revealed a subdural hematoma with retinal hemorrhages and a skull fracture, resulting in swelling so severe that neurosurgeons were required to remove both sides of the child's skull in order to relieve the pressure on his brain.

Defendant then provided police—over a 24-hour period—with four written statements, initially claiming that the child fell down the stairs, and then stating that he was spinning the child around when he fell, rough-housing with the child while in a daze after becoming "really pissed off" that the infant was crying at bedtime, and that he became angry with the child after he had urinated in his pants and yanked him off the couch, causing him to hit his head. Meanwhile, additional CT scans re-

vealed that, with the exception of the brain stem, the child's brain had irreversibly ceased functioning, rendering him in a vegetative state. The child's parents chose to withdraw artificial life support, and the child died on March 1, 2008.

Defendant was thereafter charged in an indictment with manslaughter in the first degree, manslaughter in the second degree, reckless assault of a child and two counts of assault in the second degree. During his nonjury trial, defendant testified that he fell on the child while spinning him and that he immediately took the child into the shower in the hopes that water would revive him. A pediatric intensivist who treated the child in the intensive care unit following surgery testified that the child's injuries were not likely caused by his having been dropped from a height of five to seven feet; rather, the child's injuries were more consistent with having been struck by a vehicle, with being swung into something, or with an adult holding a child over his head and "swinging [him] down using all of the strength and energy that an adult can create." The People also presented the testimony of a neighbor that, at approximately 8:30 P.M. on the night of the incident, she heard the sound of the child screaming, banging, defendant yelling, "I told you you f . . . ing little bastard, maybe next time you'll listen," followed by sounds of more banging against the walls and then silence, except for the sound of running water as if someone were taking a shower. At the close of trial, defendant was convicted of manslaughter in the first degree and sentenced to 23 years in prison to be followed by five years of postrelease supervision. Defendant appeals and we now affirm.

Initially, we reject defendant's argument that there was insufficient evidence to sustain his conviction. As charged herein, "[a] person is guilty of manslaughter in the first degree when . . . [b]eing [18] years old or more and with intent to cause physical injury to a person less than [11] years old, the defendant recklessly engages in conduct which creates a grave risk of serious physical injury to such person and thereby causes the death of such person" (Penal Law § 125.20 [4]). Defendant asserts that the People failed to prove that he "cause[d] the death of" the child, contending that the decision of the child's parents to withdraw artificial life support constituted a superseding cause of death. We disagree.

It is well settled that if "felonious assault is operative as a cause of death, the causal co-operation of [even] erroneous surgical or medical treatment does not relieve the assailant from liability for the homicide" (*People v Kane*, 213 NY 260, 270 [1915]; *accord People v Stewart*, 40 NY2d 692, 697 [1976]).

Rather, the intervention of a secondary agency is a defense only if "the death is solely attributable to the secondary agency, and not at all induced by the primary one" (*People v Kane*, 213 NY at 270; *accord People v Griffin*, 80 NY2d 723, 727 [1993], *cert denied* 510 US 821 [1993]; *Matter of Anthony M.*, 63 NY2d 270, 280 [1984]; *People v Stewart*, 40 NY2d at 697). "In other words, to break the chain of events sufficiently to preclude the requisite causation for [manslaughter], the evidence must conclusively establish that the death was in no way attributable to defendant's conduct" (*People v Hicks*, 20 AD3d 695, 696 [2005], *lv denied* 5 NY3d 828 [2005] [citation omitted]).

Defendant's reliance upon *People v Eulo* (63 NY2d 341 [1984]), in which he claims that the Court of Appeals altered this standard, is misplaced. In *Eulo*, the Court of Appeals stated that death is deemed to have occurred when a person suffers (1) "an irreversible cessation of heartbeat and respiration, or, [(2) if] these functions are maintained solely by extraordinary mechanical means, an irreversible cessation of all functions of the entire brain, including the brain stem" (*id.* at 357-358). Defendant argues that his actions herein cannot be deemed the cause of the death because the child was breathing on his own and his brain stem remained active following surgery; instead, defendant argues, the removal of hydration and nutrition must be deemed a superseding cause. We note that the Court of Appeals has rejected a similar argument, holding that "*Eulo* did not change the standard [first] enunciated in *Kane*" (213 NY at 270) regarding intervening causes (*People v Griffin*, 80 NY2d at 727 [stating that *Matter of Anthony M.* (63 NY2d at 280), which reaffirmed *Kane*, was decided the same day as *Eulo* and "ma(de) evident the continuing vitality of *Kane*"]).

In our view, it cannot be said that the child's death was solely due to the decision of the parents to request a "Do Not Resuscitate" order. The physician who performed the autopsy concluded that the manner of death was homicide, caused by multiple intracranial injuries due to blunt trauma to the head inflicted by another person. We note that defendant's expert, a neurosurgeon, stated that the child would have died from his injuries within an hour if he had not received medical treatment. He further testified that although the doctors who treated the child did an "outstanding job," the injury to his brain was so severe that the child was in a vegetative state and that the Do Not Resuscitate order was not improper.* Moreover, while defendant's expert testified that the child's injuries were consis-

---

\* Public Health Law § 2967 (3) provides that "[a] parent or legal guardian may consent to an order not to resuscitate on behalf of a minor only if there

tent with the version of events to which defendant testified and there was agreement between the expert and the pediatric intensivist that the child was not brain dead following surgery because he was still breathing on his own and had brain stem activity, those physicians also testified that the child's brain "wasn't coming back," and that the child would not have died but for the blunt trauma to the head.

Under these circumstances, "there is [a] valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial" (*People v Bleakley*, 69 NY2d 490, 495 [1987]). That is, the People proved that defendant's conduct was "an actual contributory cause of death, in the sense that [it] forged a link in the chain of causes which actually brought about the death" (*Matter of Anthony M.*, 63 NY2d at 280 [internal quotation marks and citations omitted]; *see People v Hicks*, 20 AD3d at 695-696; *People v Laraby*, 244 AD2d 946 [1997], *affd* 92 NY2d 932 [1998]; *see also People v Griffin*, 80 NY2d at 726-727; *cf. People v Stewart*, 40 NY2d at 698-699). Put another way, in the circumstances of this case, defendant's acts "were at least a contributing cause of" the death (*Matter of Anthony M.*, 63 NY2d at 281) and the Do Not Resuscitate order did not break the chain of causation (*see People v Hicks*, 20 AD3d at 695-696; *People v Laraby*, 244 AD2d at 946). Furthermore, "weigh[ing] the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" in light of the elements of the crime as charged (*People v Bleakley*, 69 NY2d at 495 [internal quotation marks and citations omitted]; *see People v Danielson*, 9 NY3d 342, 348-349 [2007]), the verdict was not against the weight of the evidence.

Defendant's additional arguments do not require extended discussion. Contrary to defendant's contention that his statements to police should have been suppressed, we conclude, based upon the totality of the circumstances under which the statements were obtained, that "the police conduct was [not] such as to overbear . . . defendant's will or to undermin[e] his ability to make a choice whether or not to make a statement" (*People v Pouliot*, 64 AD3d 1043, 1045-1046 [2009], *lv denied* 13 NY3d 838 [2009] [internal quotation marks and citations omitted]; *see*

has been a written determination by the attending physician, with the written concurrence of another physician selected by a person authorized by the hospital to make such selections given after personal examination of the patient, that, to a reasonable degree of medical certainty, the minor suffers from one of the medical conditions set forth in [Public Health Law § 2965 (3) (c)]," which includes the condition of permanent unconsciousness.

CPL 60.45 [2] [a]). Further, County Court properly admitted evidence of defendant's prior conduct towards the child inasmuch as it "was probative of his motive and intent to assault [the child,] . . . provided necessary background information on the nature of the relationship and placed the charged conduct in context" (*People v Dorm*, 12 NY3d 16, 19 [2009]; *see People v Barreto*, 64 AD3d 1046, 1049 [2009], *lv denied* 13 NY3d 834 [2009]; *People v Jones*, 289 AD2d 1010 [2001], *lv denied* 97 NY2d 756 [2002]). Finally, the record does not support defendant's argument that County Court failed, in sentencing him, to take into consideration evidence that he suffered from a long history of bipolar disorder and had stopped taking his medication days before the incident due to significant side effects.

Defendant's remaining argument has been considered and found to be lacking in merit.

Cardona, P.J., Lahtinen, Stein and Garry, JJ., concur. Ordered that the judgment is affirmed.