OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be affirmed.
While on plain-clothes duty and patrolling, in an unmarked car, an area of Queens known for its narcotics activity, Police Officers Leo, Harvey and DeLavan observed defendant and another man in conversation and saw defendant pass his companion a three- by five-inch brown envelope which appeared to resemble “three dollar bags” used in drug transactions. Officers Leo and Harvey left the unmarked car and identified themselves as police officers. Defendant immediately fled, with Officers Leo and Harvey in pursuit. As he ran, defendant discarded a hat, and then threw a black object under some bushes. Defendant stopped running and was apprehended by Officer Leo at a spot approximately five houses from where the pursuit began. The black object thrown by defendant was recovered from nearby bushes and was found to be a loaded, operable nine-millimeter pistol. On appeal, defendant contends that the initial police action was an investiga *736 tory stop, and that neither police observation of the passing of a manila envelope, nor defendant’s exercise of his constitutional right to leave without answering questions, provided police with a reasonable suspicion that he had committed, or was about to commit, a crime.
In People v De Bour, we held that judicial review of the legality of police conduct must weigh the interference such conduct entails against the precipitating and attendant conditions known to the police as the encounter unfolds (People v De Bour, 40 NY2d 210, 223; see also, People v Stewart, 41 NY2d 65). We set forth a synopsis, representing the gradation of permissible police authority in encounters with citizens in public places, that correlated the degree of the officer’s objectively credible belief with the permissible scope of his intervention (People v De Bour, supra, p 223). The present case presents a situation wherein the level of police intrusion was an appropriate response to the observations and beliefs of the officers involved.
Although in exiting their unmarked car and identifying themselves as policemen the officers may have intended to seek explanatory information from defendant, or to detain him, there is no evidence that, prior to defendant’s flight, the police did anything more than approach him. The fact that defendant passed what appeared to be a "three dollar bag” in a neighborhood known for its drug activity constitutes, at the least, the "objective credible reason” necessary to support the intrusion attendant to a police approach of a citizen (see, id.). When coupled with defendant’s immediate flight upon the officer’s approach, the passing of the manila envelope in this narcotics-prone neighborhood establishes the necessary reasonable suspicion that defendant had committed, or was about to commit a crime, such that pursuit by the officers was justified (see, People v Howard, 50 NY2d 583, 592; People v Corrado, 22 NY2d 308, 313-314; compare, People v McRay, 51 NY2d 594, 604 [glossine envelopes]).
Given that the initial approach and the subsequent pursuit and detention of defendant constituted legitimate, justifiable police conduct, manifestly the recovery of the gun discarded during flight was also lawful. The weapon was produced and thrown by defendant himself after he had already discarded his hat (compare, People v Boodle, 47 NY2d 398, 402). Defendant’s argument that the People failed to prove his intent to abandon the gun is inapposite, as such analysis is employed only in situations involving an apparently discarded container *737 which is opened by police without consent, searched and found to contain contraband (see, e.g., People v Howard, supra; People v Baldwin, 25 NY2d 66; compare, People v Boodle, supra). Thus, it cannot be said that defendant’s attempt to rid himself of the gun was the direct result of "precipitous and unlawful police action” (People v Boodle, 47 NY2d 398, 402-404, supra; People v Wilkerson, 64 NY2d 749, 750-751). The lawful discovery of the gun during defendant’s detention by police constituted probable cause to arrest him on the weapons charge.
Defendant’s additional contentions, that prosecutorial misconduct and an erroneous supplemental charge require reversal, are without merit. It suffices to note that the Trial Judge’s instruction on "possession” was an accurate statement of the law, albeit confusing, and merely stated that, if the defendant threw a black object, he had possession of that black object within the meaning of Penal Law § 10.00 (8).
Chief Judge Wachtler and Judges Meyer, Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
On review of submissions pursuant to section 500.4 of the Rules of the Court of Appeals (22 NYCRR 500.4), order affirmed in a memorandum.