THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD GAINES, Appellant.

First Department, August 2, 1990

## APPEARANCES OF COUNSEL

*Rona Feinberg* of counsel *(Helen A. Feuer* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

*Ira Mickenberg* of counsel *(Barry R. Strutt* with him on the brief, attorney), for appellant.

*Richard Gaines,* appellant *pro se.*

### OPINION OF THE COURT

ELLERIN, J.

Defendant's conviction of criminal possession of a weapon in the third degree arises out of an arrest following an anonymous tip. The police testimony at the combined *Mapp/Huntley* hearing established that at 12:45 A.M. on January 25, 1986, two pairs of anticrime police officers, in plain clothes and unmarked cars, received a radio report, based on an anonymous source, that a man with a sawed-off shotgun was selling crack on the sidewalk in front of 51 East 129th Street. The report stated that the shotgun and the drugs were in a brown paper shopping bag inside, or next to, a garbage can. The report described the suspect as a 6-foot 1-inch black man wearing a blue jacket, camouflage pants, and white, or white and blue, sneakers. Within less than two minutes, both sets of officers arrived at the location but saw no one standing in front of 51 East 129th Street. The officers did observe a black man, wearing clothing as described in the report, standing on the other side of the street talking with a woman who was not mentioned in the report. Notably, no shotgun or shopping bag were in view.

Some of the officers had their guns drawn as they left their cars and as they approached defendant, one of the officers identified himself as a police officer. The officers did not question defendant or make any other inquiry or investigation. Instead, an officer immediately asked defendant to step over to a nearby parked car and place his hands on the roof. When defendant "hesitated" and looked around, other officers drew their guns. Uniformed police officers, who had arrived in the interim, approached as well. Defendant placed his hands on the roof of the car and was frisked by Officer Rios, who found a nine millimeter automatic weapon inside defendant's front waistband. Defendant was arrested and brought to the police station and an hour or two later, after *Miranda* warnings had been given, he made certain statements.

The hearing court credited the officers' testimony, a decision

which we find no basis to disturb, and denied the motion to suppress, concluding that the radio report "was so specific and congruous with that which was actually encountered that its reliability could be assumed". Because we disagree with the hearing court's conclusion as to the import and legal consequence of the radio report in question, we reverse and suppress the gun under the circumstances here present.

An anonymous tip which gives a general description and location of a man with a gun does not generate reasonable suspicion warranting a stop and frisk of anyone who may happen to meet the description (People v Stewart, 41 NY2d 65, 69). Rather, such information merely furnishes the police officer with the common-law right to inquire. The reason why only such limited degree of police intrusion is permitted is the inherently inferior reliability of an anonymous tip. Consequently, while a police officer is duty bound to investigate a radio report of such a tip, it is only where the anonymous information is "so specific and congruous" with that which is actually encountered that the reliability of the tip may be reasonably assumed, or when the information provided by the tip is considered in conjunction with the attendant circumstances and exigencies, that more intrusive police action may be justified (e.g., People v Benjamin, 51 NY2d 267; People v Bond, 116 AD2d 28).

Here, contrary to the conclusion reached by the hearing court, the observations of the officers were not "so specific and congruous" with the information provided by the radio report as to heighten the tip's reliability and provide the officers with reasonable suspicion to justify a stop and frisk. True, defendant's clothing, hardly unique or particularly distinctive, matched the physical description given in the tip. However, despite the fact that the tip had been received but a few minutes earlier, defendant was not standing in front of the building specified. Moreover, the absence of a shotgun or the described shopping bag containing the alleged gun or drugs materially differed from the information given in crucial regard. Lacking confirmation of the relevant details of the shotgun and shopping bag, the mere presence of an individual standing across the street from a specified address, engaged in conversation with a woman, can hardly be said to provide the "specific or congruous" confirmation of the details provided in the anonymous tip which would have been necessary to provide reasonable suspicion that defendant had committed, was committing, or was about to commit a crime. Absent the

requisite reasonable suspicion warranting a stop and frisk, the officers at the juncture had only the common-law right to inquire. *(See, People v De Bour,* 40 NY2d 210.)

The police, however, chose not to follow that course of inquiry, nor to check the surrounding area, including the garbage can described in the anonymous report, for any confirmatory signs of criminal activity. Instead, with guns drawn they immediately stopped and frisked the defendant. There were no exigent circumstances or other independently developing factors to justify such an intrusive forcible stop and frisk. The moment's "hesitation" by the defendant when suddenly approached by police officers directing him to place his hands on a nearby car was neither furtive or otherwise suspicious. There was no indication that defendant was carrying a shotgun, nor did his behavior in any way provide reason to believe that there was any danger of physical harm or risk to the officers. The four plain-clothes officers had approached the lone defendant with guns drawn and additional uniformed officers had arrived and secured the area. Therefore, unlike the situation in *People v Salaman* (71 NY2d 869) there was no reasonable fear for the officers' safety that might otherwise have justified the stop and frisk.

Since we find that the level of the police intrusion under the circumstances here present was unjustifiable, the motion to suppress the gun seized pursuant to the unlawful search and the statements made subsequent thereto should be granted, and the indictment dismissed.

Accordingly, the judgment, Supreme Court, New York County (Jay Gold, J.), rendered July 6, 1987 which convicted defendant, after jury trial, of criminal possession of a weapon in the third degree and sentenced him to a prison term of 3½ to 7 years, should be reversed, on the law, and the motion to suppress granted, and the indictment dismissed.

SULLIVAN, J. P., ROSS, KASSAL and WALLACH, JJ., concur.

Judgment, Supreme Court, New York County, rendered on July 6, 1987, unanimously reversed, on the law, and the motion to suppress granted, and the indictment dismissed. The *matter is* remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL

160.50, not less than 30 days after service of this court's order upon the respondent, with leave during this 30-day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.