■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STEVEN MARTINEZ, Appellant.—Appeal by the defendant from a judgment of the County Court, Westchester County (Nicolai, J.), rendered April 9, 1990, convicting him of criminal possession of a controlled substance in the fifth degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is affirmed and the matter is remitted to the County Court, Westchester County, for further proceedings pursuant to CPL 460.50 (5).

On April 7, 1989, at about 10:50 P.M., Detective Joseph Radzinski and his partner were on patrol in an unmarked police car. They were patrolling an area where Detective Radzinski had previously made approximately 50 drug-related arrests when they observed the defendant remove a metal "Hide-A-Key" box from the steel grate covering the window of a plumbing supply store. The Hide-A-Key box was of a kind in which Detective Radzinski had on prior occasions observed persons hide cocaine.

The two detectives, each dressed in plainclothes but wearing an identifying badge, exited the vehicle, without drawing their guns, in order to make inquiry. The defendant, who on a prior occasion had observed Detective Radzinski making an arrest, looked at the detectives and turned and ran, with the Hide-A-Key box, into a nearby grocery store, which was open to the public. Detective Radzinski and his partner followed and they observed the defendant hand the box to the codefendant Palmer, who, followed by Detective Radzinski, went to the back of the store, where he threw the box to the floor. Detective Radzinski picked up the box, looked inside, and saw 17 vials of what appeared to be and later proved to be crack cocaine. Both the defendant and Palmer were then placed under arrest.

Although the defendant contends otherwise, we conclude that the County Court properly denied the defendant's motion to suppress the 17 vials of crack cocaine as the fruits of an unlawful seizure. We find, in light of Detective Radzinski's experience, that the location, the hour, the defendant's conduct in removing a Hide-A-Key box from a steel grate designed to prevent theft, and his flight upon the non-coercive

approach of the police, all combined to provide a lawful basis for pursuit of the defendant into the grocery store (see, People v Leung, 68 NY2d 734; People v Wider, 172 AD2d 573; People v Grimsley, 156 AD2d 714; cf., People v Howard, 50 NY2d 583, 592, cert denied 419 US 1023). Therefore, the defendant's act of handing and thus abandoning the Hide-A-Key box to the codefendant Palmer was not the product of any unlawful police conduct (cf., People v Grimsley, supra; People v Wider, supra; see also, People v Boodle, 47 NY2d 398, 404). Since the defendant has no standing to challenge police conduct insofar as it was directed at the codefendant Palmer (see, People v Wesley, 73 NY2d 351; cf., People v Mosley, 68 NY2d 881, cert denied 482 US 914), whether Palmer also abandoned the "Hide-A-Key" box and thus whether Detective Radzinski was justified in opening it are not now at issue. However, the contraband Detective Radzinski thereby discovered gave him probable cause to arrest (cf., People v Leung, supra).

We also disagree with the defendant's claim that the evidence was legally insufficient to support the verdict of guilt. Viewing the evidence in the light most favorable to the prosecution (see, People v Contes, 60 NY2d 620), we conclude that it was legally sufficient to support a determination that defendant possessed the cocaine seized from the Hide-A-Key box and that the defendant knew what he possessed. It is well settled that knowledge may be proven circumstantially and that, generally, possession may give rise to an inference that the possessor knows what he or she possesses (see, People v Mizell, 72 NY2d 651, 656; People v Reisman, 29 NY2d 278, 285, cert denied 405 US 1041). Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence (see, CPL 470.15 [5]).

We have examined the defendant's remaining contentions and find them to be unpreserved for appellate review or without merit (see, People v Ford, 66 NY2d 428; People v Thomas, 50 NY2d 467; People v Brown, 48 NY2d 388; People v Thomas, 170 AD2d 549). Harwood, J. P., Rosenblatt and Miller, JJ., concur.

Lawrence, J. dissents and votes to reverse the judgment, on the law, grant that branch of the defendant's omnibus motion which was to suppress physical evidence, dismiss the indictment, and remit the matter to the County Court, Westchester County, for the purpose of entering an order in its discretion pursuant to CPL 160.50, with the following memorandum decision, in which O'Brien, J. concurs.

At the suppression hearing, Detective Joseph Radzinski testified that on April 7, 1989, at approximately 10:50 P.M., he and his partner, both in civilian clothes, were patrolling in an unmarked police vehicle in a section of the City of Mount Vernon allegedly known for its drug activity. Detective Radzinski observed the defendant pick a metal box, commonly known as a "Hide-A-Key" box, from a steel grate attached to a storefront window of a plumbing store. Radzinski testified that on two prior occasions he had been involved in cases where Hide-A-Key boxes had been found containing crack cocaine or other narcotics although such boxes were not the bases of the prior arrests. As Detective Radzinski, with his police shield prominently displayed on a chain around his neck, and his partner exited their vehicle, the defendant looked in their direction, appeared to become alarmed, and ran into the grocery store next to the plumbing store. Detective Radzinski and his partner pursued the defendant into the store. Inside, the defendant handed the box to one William Palmer, who then ran to the rear of the store, with Detective Radzinski in pursuit. Upon reaching the rear of the store, Palmer flung the box to the ground. Detective Radzinski retrieved the box, looked inside, and observed 17 vials which contained what appeared to be crack cocaine. The defendant and Palmer were thereafter placed under arrest. Subsequently, after the joint suppression hearing, the charges against Palmer were severed. Palmer was later acquitted after a nonjury trial.

Contrary to the majority's holding, I find that the police officer's observations of the defendant's conduct were insufficient to establish a "lawful basis" for the pursuit and seizure of the defendant. While a different result might be warranted under *California v Hodari D.* (499 US —, 111 S Ct 1547), in my view, *People v Howard* (50 NY2d 586, 590, *cert denied* 449 US 1023), which was decided on State constitutional grounds, governs the instant case *(see also, People v Bennett,* 170 AD2d 516). The evidence was insufficient to establish that a Hide-A-Key box was a " 'hallmark' " *(People v McRay,* 51 NY2d 594, 605) of drug activity *(cf., People v Leung,* 68 NY2d 734 [a three-by five-inch brown or manila envelope which appeared to resemble "three dollar bags" used in drug transactions]; *People v McRay, supra* [glassine envelope]; *People v Kosciusko,* 149 AD2d 620 [sandwich-size plastic bag]). As noted, Detective Radzinski testified that on only two occasions prior to the incident had a Hide-A-Key box been found containing narcotics and he further admitted that such boxes had also been found without contraband and he "guess[ed]" that a person

"could even hide keys in them, like they were intended". In addition, there was no evidence that the defendant was previously connected in any way with illegal drug activity, or that the box taken by the defendant had been previously used for the storage of narcotics, or that it contained narcotics on the night in question, or that the defendant's taking of the box was illegal. Thus, while there may have been a "basis for questioning defendant * * * there was nothing that made permissible any greater level of intrusion" *(People v Howard, supra,* at 590). "Moreover, the defendant's flight upon being approached by the officers did not give rise to probable cause justifying arrest * * * nor did it give rise to a reasonable suspicion justifying actual or constructive restraint" *(People v Bennett, supra,* at 516-517; *see also, People v Howard, supra,* at 592; *People v Grant,* 164 AD2d 170; *cf., People v Leung, supra; People v Grimsley,* 156 AD2d 714; *People v Kosciusko, supra).* Finally, contrary to the majority's contention, the defendant's handing of the box to Palmer did not constitute an abandonment of the box since the hearing testimony clearly established that the box was discarded as " 'a spontaneous reaction to a sudden and unexpected confrontation with the police' " *(People v Bennett, supra,* at 517, quoting *People v Boodle,* 47 NY2d 398, 404, *cert denied* 444 US 969), and the defendant did not "purposefully divest himself of possession of the" box *(People v Howard,* 50 NY2d, at 593, *supra; cf., People v Leung, supra,* at 736-737; *People v Boodle,* 47 NY2d 398, 404, *supra; People v Wider,* 172 AD2d 573; *People v Kosciusko, supra,* at 621-622).

In light of my determination on the suppression issue, I need not address the defendant's other contentions.