■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTONIO BORA, Appellant. [595 NYS2d 437] —Judgment, Supreme Court, New York County (Harold Rothwax, J., at suppression hearing; Herbert Altman, J., at plea and sentence), rendered April 26, 1990, convicting the defendant, upon his plea of

guilty, of criminal possession of a controlled substance in the fifth degree and sentencing him, as a predicate felon, to an indeterminate term of imprisonment of from two to four years, affirmed.

After the defendant was indicted for the crime of criminal possession of a controlled substance in the fourth degree, a hearing was held in response to his motion to suppress physical evidence. Police Officer Blake Stuller testified that at 6:58 P.M. on June 1, 1989, he and his partner, Officer Minniter, received a radio report of a male black, wearing red and blue, possessing weapons and selling drugs at the corner of 148th and St. Nicholas Avenue, an area known by the officers to be a drug-prone location.

Within one minute of receiving the report, the officers arrived at the location indicated and saw approximately ten people in the area, including the defendant, who was the only one wearing a red shirt and blue pants at the corner described. Stuller, who was in uniform, got out of the patrol car to approach the defendant and the defendant began to walk away. Stuller told him to stop, but instead the defendant ran, and, as he fled, threw a brown paper bag containing 101 vials of crack cocaine on the ground. The officers pursued the defendant who was then arrested.

The Supreme Court, concluding that the officers had acted properly and that the defendant had abandoned the contraband, denied his motion to suppress. The defendant thereafter pleaded guilty to the crime of criminal possession of a controlled substance in the fifth degree.

An anonymous tip which gives a general description and location of an individual with a gun furnishes the police with the common-law right to inquire (see, People v Gaines, 159 AD2d 175, 177, lv withdrawn 76 NY2d 986). This common-law right to inquire is "activated by a founded suspicion that criminal activity is afoot", and entitles a police officer "to interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure" (People v De Bour, 40 NY2d 210, 223; see, People v Hollman, 79 NY2d 181, 191-192). However, "only where the anonymous information is 'so specific and congruous' with that which is actually encountered that the reliability of the tip may be reasonably assumed, or when the information provided by the tip is considered in conjunction with the attendant circumstances and exigencies, that more intrusive police action may be justified" (People v Gaines, supra, at 177, citing People v Benjamin, 51

NY2d 267; *People v Bond,* 116 AD2d 28, *lv denied* 68 NY2d 767). In order forcibly to stop and detain an individual, the officer must have a reasonable suspicion that the person has committed, is committing, or is about to commit a crime *(People v May,* 81 NY2d 725; *People v Martinez,* 80 NY2d 444; *People v Hollman, supra; People v De Bour, supra).*

After receiving the radio report, the officers arrived at the known drug location within one minute. Although approximately ten people were in the area, only the defendant was wearing the clothing described. He was also observed standing on the corner indicated in the report. While the Court of Appeals has held that a pat down is permissible under such circumstances *(see, People v Salaman,* 71 NY2d 869), at the very least, the officers herein had a common-law right to inquire, entitling them to interfere with the defendant to the extent necessary to gain explanatory information *(People v De Bour, supra).* However, as they approached, without guns drawn, the defendant began to walk away. It was only after he started to leave that Officer Stuller called to him to stop. Instead of complying with this request, the defendant fled.

The police radio transmission which provided detailed information regarding a man with a gun and selling drugs, the officers' quick response time, their observation of the defendant at the specified location, of being the only person wearing clothing matching the description broadcast in the report, together with the defendant's attempt to flee when he saw the officers before they questioned him, his refusal of their request to stop and then his flight, all combined to provide the officers with the reasonable suspicion necessary to pursue the defendant *(People v Martinez, supra; People v Leung,* 68 NY2d 734; *People v Wider,* 172 AD2d 573; *People v Jackson,* 172 AD2d 561, *lv denied* 78 NY2d 1077; *cf., People v May, supra).* "[T]he level of police intrusion was an appropriate response to the observations and beliefs of the officers involved." *(People v Leung, supra,* at 736; *People v De Bour, supra.)*

Since the initial approach and subsequent pursuit and detention of the defendant constituted appropriate, lawful police conduct, the seizure of the bag containing the vials of cocaine which the defendant discarded during flight was also lawful *(People v Martinez, supra; People v Leung, supra).* After recovering the vials of cocaine, the police had probable cause to arrest the defendant *(supra).*

Accordingly, the defendant's motion to suppress physical evidence was properly denied. Concur—Carro, J. P., Milonas and Rosenberger, JJ.

Asch, J., concurs in a separate memorandum as follows: The essential issue in this case is whether a request by a policeman to "stop" made to an individual who begins to walk away after the police approach to question him pursuant to their common-law right of inquiry, constitutes a "seizure" of that individual in violation of his rights under article I (§ 12) of the New York State Constitution and the provisions of CPL 140.50, and the common law of this State *(see, People v Hollman,* 79 NY2d 181, 194-195).

Under the facts of this case, the action by the police did not constitute a seizure under the Fourth Amendment of the US Constitution. While the United States Supreme Court has pointed out that a seizure occurs "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen" *(Terry v Ohio,* 392 US 1, 19, n 16), it has narrowed the definition of "seizure" to exclude a police officer's pursuit of an individual, even assuming the activity constituted a "show of authority" asking the individual to halt, because the individual did *not* comply with that request until he was actually tackled by the pursuing officer. Accordingly, the Supreme Court held that a motion to exclude evidence of cocaine abandoned by a suspect, while he was running, was properly denied *(California v Hodari D.,* 499 US 621, 111 S Ct 1547). The facts in the instant case are almost "on all fours" with those in *Hodari D.* The officer asked the defendant to "stop" as he walked away, but the defendant did not comply with that request. Instead, he began to run away. The officer followed him and during this pursuit, and *before* the officer apprehended the defendant, the defendant abandoned the cocaine. Accordingly, there has been no violation of defendant's Fourth Amendment rights in this case.

However, it is necessary to continue the inquiry. In discussing this Federal approach and contrasting it with the seminal New York case of *People v De Bour* (40 NY2d 210), the Court of Appeals has written:

"*De Bour* represents the culmination of a number of State common-law cases that provided a framework for the evaluation of police-civilian encounters *(see, e.g., People v Cantor, supra; People v Ingle,* 36 NY2d 413; *People v Rosemond, supra; People v Rivera,* 14 NY2d 441). In *De Bour,* constitutional law and common law both played a part in the articulation of the four-part test. Although we stated that 'constitutional considerations do not disappear' when police encounters fall below the level of a seizure *(People v De Bour, supra,* at 217), we did not rest our analysis squarely upon the language of either the

Federal or State Constitution. Rather, we noted that '[t]he basic purpose of the constitutional protections against unlawful searches and seizures is to safeguard the privacy and security of each and every person against all arbitrary intrusions by government. Therefore, any time an intrusion on the security and privacy of the individual is undertaken with intent to harass or is based upon mere whim, caprice or idle curiosity, the spirit of the Constitution has been violated' *(id.,* at 217). To some extent, then, our holding in *De Bour* was not compelled by the specific language of either the State or the Federal Constitution. Rather, it reflected our judgment that encounters that fall short of Fourth Amendment seizures still implicate the privacy interests of all citizens and that the spirit underlying those words required the adoption of a State common-law method to protect the individual from arbitrary or intimidating police conduct.

"The continued vitality of *De Bour,* therefore, is not contingent upon the interpretation that the Supreme Court gives the Fourth Amendment, because *De Bour* is largely based upon considerations of reasonableness and sound State policy." *(People v Hollman,* 79 NY2d 181, 195, *supra.)*

A few minutes before 7:00 P.M. on June 1, 1989, Officer Stuller and his partner Officer Minniter received a radio run from Central that a male black wearing red and blue was at the corner of 148th Street and St. Nicholas Avenue in possession of weapons and selling drugs. Within a minute of receiving that dispatch, the officers approached that corner, a known drug location. Officer Stuller testified that while there were a number of people "walking, standing maybe ten, maybe five feet away from him", "[j]ust the defendant" wore a red and blue outfit. As the officers exited the car, the defendant started to walk away and Officer Stuller "stated" and "said stop" to defendant who thereupon started running. After running five or ten feet, the defendant threw something to the ground, which the officer picked up. He continued to chase defendant until the defendant stopped, the officer "called him, saw what was in the bag and put him under arrest". The bag contained 101 vials of crack cocaine.

Applying the four-step test of *De Bour (supra,* at 223), we are instructed that: "The minimal intrusion of approaching to request information is permissible when there is some objective credible reason for that interference not necessarily indicative of criminality *(People v De Bour, supra).* The next degree, the common-law right to inquire, is activated by a founded suspicion that criminal activity is afoot and permits a

somewhat greater intrusion in that a policeman is entitled to interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure".

Clearly, in the instant case, the officers, who, after receiving a call about a male black dressed in red and blue in possession of weapons and selling drugs at a specified corner, observed defendant, a male black, dressed in red and blue clothing, the only one on that corner, a known drug location, so attired, had a "founded suspicion that criminal activity [was] afoot". This founded suspicion, therefore, activated Officer Stuller's common-law right of inquiry. The fact that the defendant began to immediately walk away upon observing the officers, prompted Officer Stuller to ask defendant to "stop". This minimal interference, therefore, was not a "forcible seizure", but was necessary in order for the police officer to gain explanatory information. *(People v De Bour, supra,* at 223; *see, People v McLaurin,* 43 NY2d 902, *revg on dissenting opn* 56 AD2d 80, 84.)

Thereafter, defendant's flight, when combined with the detailed description, which he alone fit, escalated the initial common-law right of inquiry to the next level set forth in *De Bour (supra),* a reasonable suspicion that defendant was committing, had committed or was about to commit a felony or misdemeanor, justifying the police pursuit *(see also, People v Leung,* 68 NY2d 734; *People v Jones,* 69 NY2d 853; *People v Allen,* 73 NY2d 378).

While the defendant urges that the mere utterance of the word "stop" by Officer Stuller constituted a forcible seizure of defendant, the record establishes the officers approached only to question defendant. They did not have their guns drawn. Such an interpretation, therefore, is contrary to the express teaching of *De Bour* which give the police the right to a "greater intrusion in that a policeman is entitled to interfere with a citizen to the extent necessary to gain explanatory information" *(People v De Bour, supra,* at 223). In this case, the defendant did not continue walking away, simply disregarding the verbal directive, but ran from the scene, discarding contraband as he ran. There was no question posed to the officer at the suppression hearing as to what he would have done if the defendant *continued* to walk away. In any event, the officer was justified under the circumstances herein, as noted, to "interfere" with defendant's movement "to the extent necessary to gain explanatory information" *(supra,* at 223; *see also, People v Diaz,* 80 NY2d 950).

*People v Taveras* (155 AD2d 131, *appeal dismissed* 76 NY2d

871), relied upon by defendant, is inapposite. In *Taveras,* defendant *was* seized when the officer, without *any* articulable reason, ordered the defendant to turn around and frisked him. *People v Holmes* (181 AD2d 27, *lv granted* 80 NY2d 930) is also inapposite. In that case, a panel of this Court found that while the police had objective credible reasons to approach to ask questions, they did not have, as the police *did have* in this case, a founded suspicion that criminality was afoot which would have justified pursuit.

Finally, the defendant relies on *People v Rodriguez* (178 AD2d 381). There the Court noted the evidence at the hearing established the arresting officer received a radio call that four men were selling drugs at a specified street corner with one man described as a male Hispanic wearing a blue cut-off tee-shirt with the words "Portland Maine" on the back. When the police arrived at that location, defendant was there, fitting the description. When the officer called "hey buddy", the defendant turned around, saw the officer and started to run. The officer pursued and in the pursuit the defendant threw an object to the ground. It turned out to be 15 vials of crack cocaine taped together. I disagree with the finding of *Rodriguez* that the description of a male Hispanic at the exact location wearing a blue cut-off tee-shirt with the exact words "Portland Maine" *was not* so specific and congruous with that actually encountered by the officers that its reliability could reasonably be assumed. In addition, *Rodriguez* applied a lack of "probable cause" standard as a predicate for the pursuit. However, the Court of Appeals has repeatedly stated that the police need only reasonable suspicion, *not* probable cause for pursuit *(see, People v Leung, supra; People v Jones, supra).*