■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY MITCHELL, Appellant. [601 NYS2d 100] —Judgment, Supreme Court, New York County (Herbert Altman, J.), rendered March 28, 1991, convicting defendant, after jury trial, of criminal possession of a weapon in the third degree and bail jumping in the second degree, and sentencing him to concurrent terms of from 3½ to 7 years and 2 to 4 years, respectively, to run consecutively to a sentence imposed in Queens County, is affirmed.

Police officers patrolling on West 41st Street near the Port

Authority Bus Terminal were flagged down by a woman, who pointed at the defendant and told the officers that he had a shotgun and had threatened to shoot her with it. The officers told the woman, who remained at the scene, to take cover.

They then approached the defendant, immobilized him and seized a suitcase, which defendant had placed between his legs. Inside the suitcase the officers found a sawed-off shotgun contained in a cardboard box. In evaluating the police conduct it has been stated that the "touchstone in each case is the reasonableness of the police conduct in light of the particular circumstances giving rise to the police intrusion at each stage" *(People v Cartagena,* 189 AD2d 67, 70; *see, People v Leung,* 68 NY2d 734; *People v Martinez,* 80 NY2d 444). The dissent acknowledges that information received from a citizen in a face to face encounter may give rise to a reasonable suspicion of criminal activity which will then permit the police to stop and detain the suspected individual *(People v Castro,* 115 AD2d 433, 435, *affd* 68 NY2d 850; *see, People v Fernandez,* 182 AD2d 431, *lv denied* 79 NY2d 1049). " ' "[W]here the report indicates that the person has used the weapon to menace or threaten or will use the weapon if stopped for questioning * * * then personal and public safety may well mandate a more intensive police intrusion." ' " *(People v Cartagena, supra,* at 71, quoting *People v Bond,* 116 AD2d 28, 31, *lv denied* 68 NY2d 767, quoting *People v De Bour,* 40 NY2d 210, 225.) While the dissent focuses on the legitimacy of the officers' concern for their safety, the additional concern of the safety of the general public in the area of a main bus terminal increased the exigency of the situation, justified and in fact mandated, that the officers search the defendant to determine if he possessed a weapon as related to the police officers by the informant. The exigencies of this situation are apparent and there were few other expedient options open to the officers involved. The denial of suppression was proper.

Defendant's conviction was not against the weight of the evidence. There was ample evidence that defendant knowingly possessed the weapon. Even if the weapon had recently been shipped to New York, given the circumstances that the shotgun, wrapped in cardboard, was the only object contained within the bag which defendant was carrying, and that the bag was unlocked, the jury had ample grounds on which to find that defendant knew of the contents.

Likewise, there was ample evidence on which to base defendant's conviction for bail jumping. It was not necessary to

demonstrate an intent to abscond *(People v McMillian,* 174 AD2d 759). Defendant's present arguments with respect to the court's failure to charge the jury on evidence of flight and circumstantial evidence are unpreserved, and we decline to review them in the interest of justice.

We have considered defendant's remaining arguments and find them to be without merit. Concur—Sullivan, Wallach, Ross and Kassal, JJ.

Murphy, P. J., dissents in a memorandum as follows: The defendant has been convicted of criminal possession of a weapon based upon the introduction of evidence seized in a warrantless search of a bag he had been carrying just prior to his arrest. At issue on this appeal is whether the search and ensuing seizure of incriminating evidence was legal.

Detective Beth Sharrin testified for the People at the defendant's *Mapp* hearing. She stated that while on patrol near the Port Authority Bus Terminal she and another officer were approached by a woman who appeared to be a prostitute. The woman, who seemed nervous and excited, exclaimed, "my man has a shotgun. And he threatened to shoot me with it". The officers' attention was then directed by the woman to a man on the other side of the street carrying a suitcase. The man, later identified as the defendant, crossed the street, went to a pay phone and took the receiver off the hook. As he did so, Detective Sharrin accompanied by her partner and two backup officers converged upon him. The suitcase, which the defendant had placed between his legs, was immediately seized by the officers. Detective Sharrin testified that as the suitcase was seized, three officers "immobilized" the defendant against a nearby fence. The fourth officer, having secured the suitcase, proceeded to open it. Inside the suitcase he found a closed box. On opening the box, the officer found an object wrapped in pieces of cardboard. As he removed the object from the box the cardboard wrapping fell away revealing a sawed-off shotgun. The defendant was then placed under arrest.

The hearing court denied the defendant's motion to suppress the gun upon the ground that, although performed without a warrant, the search of the defendant's luggage was nevertheless permissible since it was an incident of a lawful arrest, i.e., an arrest supported by probable cause; the search was thus found to fall within a category of searches for which an exception to the usual requirement of prior judicial authorization has been recognized. As I cannot agree that probable cause for the defendant's arrest existed prior to the search

which disclosed the gun, I believe that the defendant's suppression motion ought to have been granted. Indeed, even if there had been sufficient grounds for the defendant's arrest and, accordingly, for a search incident thereto, I would still question whether the particular search conducted did not exceed permissible limits.

As a matter preliminary to the analysis of the dispositive issues, it should be noted that there is no question that the police were entitled to act upon the information they received from the citizen informant. Indeed, it would seem unarguable that information such as that supplied in the present case, when received by the police in a face-to-face encounter with an informant, may give rise to a reasonable suspicion of a person's criminal involvement and, if it does, permit the police to stop the suspected individual and investigate further *(see, e.g., People v Castro,* 115 AD2d 433, *affd* 68 NY2d 850). Nor is there question that incident to such a stop the police may perform a pat down search of the suspect's outer clothing in order to detect whether there are within the suspect's immediate reach weapons which the suspect might use against the officers. Plainly, then, the defendant might have been stopped and frisked and, indeed, detained for a reasonable period in order to facilitate further investigation.

The defendant, however, was not merely stopped and frisked; he was subjected to a full-blown search which extended to objects concealed within containers within his luggage. As the motion court recognized, such a search, performed in the absence of a warrant, is permissible only under circumstances justifying the invocation of some recognized exception to the warrant requirement. And, as noted, the exception which the motion court thought applicable was that which permits a search of a suspect and objects within his or her grabbable reach incident to a lawful arrest. To be lawful, however, an arrest must be predicated upon more than a reasonable suspicion of criminal activity; it must be based upon probable cause which entails the receipt by the arresting officer of " 'reasonably trustworthy information [of facts and circumstances] sufficient in themselves to warrant a man of reasonable caution in the belief' that an offense has been committed" *(People v Elwell,* 50 NY2d 231, 236, quoting *Carroll v United States,* 267 US 132, 162; *Beck v Ohio,* 379 US 89, 96). Although probable cause may arise from the tip of an informant, such a tip will not invariably suffice; in order to constitute a basis for arrest, information supplied by an informant must be sufficiently reliable to warrant a reason-

ably cautious inference that it is in some measure probable that the prospective arrestee has committed a crime. Accordingly, "if probable cause is based on hearsay statements, the police must establish that the informant had some basis for the knowledge he transmitted to them and that he was reliable" *(People v Bigelow,* 66 NY2d 417, 423, citing, *inter alia, People v Landy,* 59 NY2d 369, 375; *People v Rodriguez,* 52 NY2d 483, 488-489, citing *Aguilar v Texas,* 378 US 108, 114; *People v Hanlon,* 36 NY2d 549, 558; *cf., Illinois v Gates,* 462 US 213).

Neither of these requisites was established in this case. At the time the police officers seized the defendant and searched his luggage, they had absolutely no knowledge of the basis for the informant's bare accusation that the defendant had a shotgun with which he had threatened to shoot her; there was no indication whether the informant had actually seen the gun, nor were the police provided with any specifics respecting the circumstances in which the alleged threat had been made. The tip, of course, was not in any measure confirmed by the defendant's conduct which, insofar as it was observed by the police, was wholly innocuous. Nor were the police in possession of other information warranting confidence in the informant's reliability. The police officers involved had no prior acquaintance with the informant and so were unable to evaluate her accusation respecting the defendant in the context of any previous demonstration of reliability. Indeed, at the time of the contested seizure and search the police had not yet even ascertained the informant's name; the sum of the information the police possessed respecting the informant was that she seemed to be a prostitute and had claimed that "[her] man" had a gun which he had threatened to use upon her.

The foregoing analysis, of course, does not justify the conclusion that the police could have done nothing in reliance upon the information they had been provided, for certainly the information warranted further inquiry *(see, People v Castro, supra).* The analysis does, however, show that the police did not have a sufficiently reliable predicate for an arrest; a reasonably cautious man would not have concluded on the basis of an unelaborated and otherwise unconfirmed accusation from a previously unknown source that it was in some measure probable that the target of the accusation had committed a crime. The tip which was the sole predicate for the police action in this case simply did not amount to probable cause. The warrantless search of the defendant's luggage,

then, cannot be sustained as one performed incident to a lawful arrest.

Yet, even if there had been probable cause to support the arrest and render a warrantless search incident thereto permissible, it is clear that the search performed went beyond the latitude authorized by reason of the proximity of the search to the arrest. The exception to the requirement of a warrant drawn for searches performed incident to arrest "is grounded in protecting the safety of the arresting officer by permitting him to search for and seize weapons when there is reason to fear for his safety and in preventing the person arrested from destroying evidence of criminal involvement by permitting the arresting officer to search for and seize such evidence" *(People v Belton,* 55 NY2d 49, 52-53; *see also, People v Blasich,* 73 NY2d 673, 678). At the time of the contested search, the defendant's suitcase had been taken from him and the defendant had been, to use Detective Sharrin's expression, "immobilized". Detective Sharrin testified that the defendant made no attempt to regain possession of the suitcase. Under the circumstances, the search of the defendant's suitcase did not come within the legitimate scope of a warrantless search incident to arrest. It is clear that the defendant could not have gained access to the bag—much less to the gun which, it will be recalled, was wrapped within a box within the bag—either to endanger the arresting officers or to destroy evidence of his wrongdoing. In the absence of any of the exigencies providing justification for a warrantless search incident to arrest, the officers were obliged to obtain a warrant before searching the bag and the containers found within it.

Accordingly, I would grant the motion to suppress and modify the defendant's judgment of conviction to the extent of reversing his conviction for criminal possession of a weapon and dismissing the count of the indictment under which that offense is charged.