(July 21, 1994)

■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v RAYMOND BLACKWELL, Respondent. [614 NYS2d 527] —Order, Supreme Court, Bronx County (John P. Collins, J.), entered April 28, 1992, granting defendant's motion to suppress physical evidence seized and statements made at the time of his arrest, reversed, on the law, defendant's motion is denied, and the matter is remanded for further proceedings.

At about 1:15 A.M. on the morning of November 22, 1990, as they drove north on Park Avenue in the vicinity of 182nd Street in the Bronx, two uniformed police officers heard a volley of gunshots coming from somewhere in front of them. As they proceeded in the direction of the shots, they observed defendant run out of a building at the corner of 185th Street and Park Avenue. As he ran in their direction, the officers saw defendant look in their direction, stop short, turn and run north on Park Avenue before turning east on 185th Street. The officers briefly gave chase in their patrol car until defendant ran into a vacant lot, whereupon one officer got out and chased defendant on foot into the lot where he saw defendant remove a handgun as he ran and throw it into some bushes. Defendant was cornered shortly thereafter hiding in some other bushes and, as he was seized, he called out: "Lynch [the officer], this is Blackwell. Don't hit me. Don't hit me." A subsequent search of the bushes turned up a loaded .38 handgun with three spent shells. When Officer Lynch then asked a colleague to ascertain whether there had been a shooting or other incident in the area, defendant, who was standing nearby, said: "Lynch, I fired those shots earlier, I didn't fire them now." In a search incident to defendant's arrest two tinfoil packages of what appeared to be cocaine were found in his pants pocket.

The hearing court granted suppression, finding that although *People v Leung* (68 NY2d 734) permitted the police to pursue a person who fled upon their approach, the total circumstances would not lead a reasonable man to a reasonable suspicion that defendant had been firing the shots or that he had or was about to commit a crime. We disagree.

Clearly, when the officers heard the sound of gunshots, they had reasonable suspicion that criminal activity was at hand. Shortly thereafter, according to Officer Lynch's testimony at the suppression hearing, when the officers saw defendant run from a building in the vicinity of where the shots had come from, their intention was "[j]ust to stop him and find out what he's doing in the area, why he was running from the building." This was an objective, credible reason for approaching defendant to ask for information (see, People v Jones, 118 AD2d 86, 92, affd 69 NY2d 853). As in Leung (supra), there is no evidence that, prior to defendant's flight, the police did anything more than approach him by continuing in the direction they were already driving. Only when defendant, upon seeing them approach in their marked patrol car, stopped on a dime, turned and fled did the officers pursue him. Given the circumstances, the officers would have been, at a minimum, remiss in their duties if they had failed to follow defendant and elicit whether he was connected in any way with the shots. Moreover, their action was entirely proper inasmuch as the police may pursue a fleeing subject if they have a reasonable suspicion that he has committed or is about to commit a crime (People v Jackson, 190 AD2d 542, 543 [citing People v Martinez, 80 NY2d 444], lv denied 81 NY2d 1015).

Indeed, in People v Sloan (178 AD2d 624, 625, lv denied 79 NY2d 953), "[t]he sound of a gunshot, information from civilians that the shot had come from the direction of the defendant, and the defendant's immediate flight from the approaching officer gave rise to a reasonable suspicion sufficient to justify the police to pursue and to stop and detain the defendant [citations omitted]. The gun, which was abandoned by the defendant while he was being pursued, was properly seized as its abandonment and recovery were not the result of any unlawful police action." The only difference between this case and Sloan is that the officers here relied upon their own senses in determining the direction of the shots rather than asking a couple of passersby if they heard a shot whereupon the couple pointed to a group of five males, including Sloan. Such factual difference is legally insignificant. Moreover, once the pursuing officer saw defendant throw away the gun, reasonable suspicion evolved into probable cause to arrest.

Suppression should also have been denied with regard to both the narcotics found on defendant's person, the seizure of which was clearly incidental to a lawful arrest, and defendant's spontaneous statements made to the police. Concur— Wallach, Kupferman and Ross, JJ.

Murphy, P. J., dissents and would affirm for the reasons stated by Collins, J.