■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LOUIS ANDREWS, Appellant. [663 NYS2d 530] —Judgment, Supreme Court, New York County (Harold Tompkins, J., at suppression hearing; James Yates, J., at plea and sentence), rendered May 9, 1996, convicting defendant, upon his plea of guilty, of attempted criminal possession of a weapon in the third degree and sentencing him, as a second violent felony offender, to a determinate term of imprisonment of four years, unanimously affirmed.

---

On October 31, 1995, at approximately 3:50 P.M., uniformed Officers Langellotti and Acevedo were parked in a patrol car at 250 West 135th Street between Seventh and Eight Avenues in Manhattan, when they received a radio transmission based upon an anonymous 911 call that reported that there were "three men with guns" at "141st Street and Edgecomb Avenue." The caller described the three men as black, one of whom wore "all black," another of whom was clad in "a black goose down jacket," and a third of whom had on a "gray hoody and blue jeans." Upon hearing the transmission, Officers Calamera and Pasquale, driving nearby in their patrol car, responded as back up to Langellotti and Acevedo. They proceeded north on Eighth Avenue, turned west on 141st Street (a short block from Edgecomb Avenue) when Calamera immediately observed two men fitting the descriptions transmitted standing on the south side of the street, about two-thirds of a block from the specified location. Arriving shortly thereafter (approximately 1½ minutes after the radio transmission), Langellotti and Acevedo also noticed that the two men fit the descriptions provided.

Langellotti observed the defendant wearing a black goose down jacket. The other man, later identified as co-defendant Waters, was wearing a black leather jacket and what at first appeared to be black jeans, but were actually dark blue jeans. Langellotti observed no black men nearby or other individuals in the area who fit the descriptions given over the radio.

Officer Calamera exited his vehicle, and, without drawing his gun, told defendant and Waters to put their hands at their sides and informed them he was going to pat them down because of a radio call he had received. Ostensibly out of concern for his and the other officers' safety, Langellotti approached the suspects and requested: "do me a favor, please put your hands on the wall". They complied.

Langellotti patted down defendant while Calamera patted down Waters. Langellotti initially patted defendant's outermost garment. Meanwhile, Calamera, finding it "impossible to feel if there was anything" in Waters' "bulky jacket" and fearing for his safety, reached underneath the jacket, where he felt the butt of a gun. With Langellotti looking on, Calamera removed a Glock 9 millimeter semiautomatic pistol from Waters' waistband. Upon seeing the weapon, Langellotti again patted defendant down the outside of defendant's jacket and felt a "hard object" along defendant's waist. He then unzipped defendant's "heavy" goose down jacket, felt what appeared to be the butt of a gun and pulled up defendant's shirt to remove a loaded .38 caliber revolver. Only ten to fifteen seconds had

elapsed from the time Langellotti arrived at the scene. Defendant was thereafter placed under arrest.

Following a hearing, the Court denied defendant's motion to suppress the weapon and statements by defendant following its seizure and defendant's arrest. For the reasons discussed below, we find no basis to disturb that determination.

Any inquiry into the propriety of police conduct must weigh the degree of intrusion it entails against the precipitating and attending circumstances (*People v De Bour*, 40 NY2d 210, 223). An anonymous tip that gives a general description and location of an individual with a gun merely furnishes the police with the common-law right to inquire (*People v Stewart*, 41 NY2d 65, 69). However, where the anonymous information is so specific and congruous with that which is actually encountered that the reliability of the tip may be reasonably assumed, or when the information provided by the tip is considered in conjunction with the attendant circumstances and exigencies, more intrusive police action may be justified (*People v Gaines*, 159 AD2d 175, 177, *lv withdrawn* 76 NY2d 986).

In *People v Salaman* (71 NY2d 869), a police officer received an anonymous tip of a black male with a gun at a specified location wearing a long beige overcoat and a maroon sweatshirt with a hood on it. On arriving at the intersection, he observed approximately 25 persons, but only one meeting the description. The officer then conducted a protective pat down of the individual's outer clothing. The Court found that the officer's independent observations corroborated the information received, both as to the specific description of the suspect and as to the exact location where he could be found. Noting also that it was night in a high crime neighborhood, and that the officer testified he acted for his own safety and others in the vicinity, the Court held the degree of intrusion was reasonable (*see also, People v Perez*, 224 AD2d 313, *affd* 88 NY2d 1059; *People v Tucker*, 207 AD2d 748, *lv denied* 84 NY2d 940).

As in *People v Salaman (supra)*, the description in the case at bar was specific as to gender, race, the type of some of the clothing, the color of the clothing, the number of persons and their location. The observations by the police were also specific and congruous with the information in the report: The police arrived within less than two minutes and observed at least two individuals together closely matching the description within close proximity to the location reported, the discrepancy in the color of the clothing worn by co-defendant was minor, the suspects' distance from the reported location was consistent with the distance they might have traveled in the interval of

time between the report and the officers' arrival and no other persons matching the description were seen in the area. A protective pat down was appropriate under the totality of the circumstances in order to ensure the safety of the officers and others in the vicinity (*People v Salaman, supra*; *cf., People v Bora*, 191 AD2d 384, *affd* 83 NY2d 531 [sustaining common-law right of inquiry, but finding pat down would also have been permissible under *Salaman* based upon confirmation of report]).*

Although nothing was discovered with the initial pat down in this case, the further frisk of defendant by Officer Langellotti was warranted when a gun was found on co-defendant, providing additional confirmation of the report that the men were armed, heightening the possibility that defendant too had a gun (*People v Curry*, 213 AD2d 664, *lv denied* 85 NY2d 971; *People v Pagan*, 203 AD2d 158, *lv denied* 83 NY2d 970; *People v Chin*, 192 AD2d 413, *lv denied* 81 NY2d 1071). The frisk of defendant was reasonably restricted, and not, as defendant contends, a full-blown search. Although more intrusive than the patdown of defendant's outer clothing, the step of unzipping defendant's bulky, puffy jacket and reaching inside was warranted by the discovery of a "hard object" at defendant's waist (*People v Thompson*, 232 AD2d 267, 268, *lv denied* 89 NY2d 947; *see also, People v Greenidge*, 241 AD2d 395). It may almost be considered common knowledge that a handgun is often carried in the waistband (*People v Benjamin*, 51 NY2d 267, 270). The subsequent act, pulling up defendant's shirt and removing the gun, was warranted by the discovery of what appeared to be the butt of a gun. Unlike an undefined bulge in a pocket, a bulge in the waistband is regarded as a " 'telltale' " sign of a weapon (*Matter of David B.*, 172 AD2d 828, 829; *see also, People v Holmes*, 81 NY2d 1056, 1058). Concur—Ellerin, J. P., Williams, Mazzarelli, Andrias and Colabella, JJ.

---

* *People v Hickman* (234 AD2d 151, *lv denied* 89 NY2d 1036) and *People v Gaines* (159 AD2d 175, *lv withdrawn* 76 NY2d 986) on which defendant relies, are distinguishable. In *Hickman* (*supra*, at 152), the description was general ("male 'black wearing all black' ") and lacking the totality of detail provided in the case at bar. In *Gaines*, the report was considerably more detailed, but the police were unable to confirm material details of the report (*supra*, at 177).