People v Munford (2004 NY Slip Op 50143(U))

[*1]

People v Munford

2004 NY Slip Op 50143(U)

Decided on March 10, 2004

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 10, 2004

Supreme Court, Kings County
 THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff,
against
ANTHONY MUNFORD, Defendent.
Indictment No. 1958/2003

Edward J. Mandery, Esq. For the Defendant
Rebecca Gibson, Esq. For the People

Guy Mangano Jr., J.
The defendant is charged with two counts each of Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03), Criminal Possession of a Weapon in the Third Degree (Penal Law § 265.02) and Criminal Possession of a Weapon in the Fourth Degree (Penal Law § 265.01). A Dunaway/Mapp/Huntley hearing was ordered and held. The People called four witnesses: New York City Police Sergeant Sean Patterson, Officers Michael Pisano and Enrique Gomez, and Detective Frank Laino.
FINDINGS OF FACT
The Court finds the People's witnesses to be credible.
On March 11, 2003, New York City Police Sergeants Sean Patterson and Robert Holt, along with Officer Michael Pisano, were on routine patrol in a marked police vehicle. At approximately 6:52 a.m., they received a radio transmission of shots being fired into the air at the corner of Marcy and Vernon Avenues by a black male approximately 5' 6", wearing a beige jacket, closely shaved hair, gold teeth and scratches on his face. The description was provided by an anonymous 911 caller and the trio of officers proceeded to the scene. As the officers neared the subject intersection, they observed an individual who matched the specific description. The officers exited the vehicle with their weapons drawn and approached the suspect, defendant herein, who "trotted a little bit, then stopped." When defendant clutched the left pocket of his outer coat, Sergeant Patterson physically restrained him and placed him on the hood of the police vehicle. Sergeant Patterson then observed the handle of a .38 caliber revolver in the defendant's pocket. The loaded weapon was recovered and vouchered. Defendant was then arrested and spontaneously asked the officers if they would like another gun. Officer Pisano then frisked defendant and recovered a second .38 caliber revolver from the right side pocket of defendant's jacket.
Defendant was then placed in a police vehicle for transport to the 79th Precinct. On route to the precinct, defendant spontaneously stated to Police Officer Enrique Gomez that he would give him another gun if he was released. Concerned that defendant may have another gun on his person, [*2]Officer Gomez immediately asked defendant for the location of the weapon. Defendant stated that it was at his house, 162 Hart Street, and Officer Gomez notified Sergeants Patterson and Holt of defendant's revelation. The two sergeants, Officer Pisano, the two officers transporting defendant and defendant, as well, met at 162 Hart Street. Defendant led the police to his apartment where they were greeted by defendant's wife. Both defendant and his wife gave consent to the police to search the apartment where a .9mm magazine with 15 live rounds was recovered from a suitcase in defendant's bedroom. Defendant was then transported to the 79th Precinct.
At approximately 7:40 a.m., defendant was read Miranda Warnings from a pre-printed sheet of paper. Defendant responded that he understood each question and Sergeant Patterson memorialized defendant's affirmative answer by writing the word "yes" at the end of each enumerated right. Defendant then stated to the sergeant that he had no recollection of the incident.
Later that same day, at approximately 2:15 p.m., Detective Frank Laino arrived at the 79th Precinct to interview defendant. Defendant was again read Miranda Warnings from a pre-printed sheet of paper containing six questions. Defendant responded that he understood each question and his affirmative responses were memorialized by a check mark next to the word "yes." Defendant also signed the document and simultaneously gave an oral and written statement in which he admitted possession of the two weapons. 
CONCLUSIONS OF LAW
DUNAWAY and MAPP ISSUES
In enforcing the constitutionally protected right to be left alone, the level of permissible intrusion by law enforcement officers during street encounters with private citizens is governed by the four-tier analysis as set forth in People v De Bour (40 NY2d 210). The lowest level of intrusion in approaching an individual to request information is permitted where there exists some objective credible reason for the interference not necessarily indicative of criminality (see id.; see also People v Hollman, 79 NY2d 181; People v Wells, 226 AD2d 406). The next level of intrusion, the common law right to inquire, is allowable when the police have a "founded suspicion that criminal activity is afoot and permits a somewhat greater intrusion in that a policeman is entitled to interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure" (People v De Bour, 40 NY2d 210, supra at 223). Third, a police officer may pursue, stop and detain a person when a reasonable suspicion exists that such person has committed, is committing or is about to commit a crime (see id.; see also CPL 140.50; People v Martinez, 80 NY2d 444; People v Hollman, 79 NY2d 181, supra; People v Leung, 68 NY2d 734). Finally, the fourth level of intrusion permits the arrest and custody of a person where the police have probable cause to believe that the person has committed a crime (see People v De Bour, 40 NY2d 210, supra; People v Hollman, 79 NY2d 181, supra; see also CPL 140.10; People v Brown, 256 AD2d 414).
Because the radio transmission alerted the police to an individual firing a gun, the officers were justified in approaching the suspect with their weapons drawn (see People v Brown, 127 AD2d 674). Further, defendant was present near the scene of the alleged crime and matched the specific description provided in the radio transmission by a 911 caller. This, coupled with the fact that defendant clutched his coat while "trotting" away from the officers, gave the police reasonable suspicion to stop and detain the suspect (see People v Abdul-Malik, 298 AD2d 595, lv denied 99 NY2d 611 [defendant matching description with hands in pocket while adjusting something in waistband]; People v Douglas, 254 AD2d 367, lv denied 93 NY2d 852 [defendant matching general [*3]description at scene of crime]). The encounter ripened into probable cause to arrest once the police observed the weapon in defendant's jacket (see People v Butler, 293 AD2d 686, lv denied 98 NY2d 695).
Based primarily on the United States Supreme Court's holding in Florida v J.L. (529 US 266), defense counsel maintains that the police lacked reasonable suspicion required to stop and frisk the defendant based on the anonymous 911 call and description. Reliance on the holding in J.L., however, which prohibits a stop and frisk based solely upon an anonymous telephone call, is misplaced when applied to the facts at bar. Most distinguishing, this Court notes that the police relied upon more than simply an anonymous tip for approaching defendant. As stated above, the officers observed an individual who matched "exactly" the description provided by the 911 caller, as well as furtive movements on the part of the suspect which invited further inquiry. Thus, the officers' suspicion in the instant matter was not premised only on an unverified anonymous informer, but rather from observing defendant's specific physical characteristics and conduct near the scene of the alleged crime (see People v Johnson, 102 AD2d 616, 621 ["Whatever the formulation of the rule, however, it is clear that 'reasonable suspicion' deals with probabilities and not with hard certainties. The police may draw inferences and make deductions from not only their own observations but also from, among other things, information obtained from police reports, objective facts and consideration of the type of crime committed and usual modus operandi"]; see also Florida v J.L., 529 US 266, supra).
Given the legality of the arrest, the subsequent searches of defendant's person was also valid as the weapons recovered were the products of searches incident to a lawful arrest (see People v Phillips, 260 AD2d 582, lv denied 93 NY2d 1025; People v Williams, 236 AD2d 642, appeal denied 90 NY2d 866; People v Decayette, 217 AD2d 557, appeal denied 86 NY2d 841). As for the recovery of the .9mm magazine in defendant's home, the record is clear that defendant and his wife consented to the search and spontaneously volunteered all information which led to the recovery (see People v Obee, 299 AD2d 426, lv denied 99 NY2d 584; People v Kocowicz, 281 AD2d 643, lv denied 96 NY2d 831; People v Davis, 224 AD2d 541, appeal denied 88 NY2d 935).

HUNTLEY ISSUES
Turning to the statement made by defendant immediately after the discovery of the first gun to the effect that he had a second gun, the record is clear that it was voluntary and spontaneous and was not the product of police interrogation or its functional equivalent (see People v Rivers, 56 NY2d 476; see also People v Davis, 261 AD2d 411, lv denied 93 NY2d 1002; People v Green, 258 AD2d 531, lv denied 93 NY2d 971; People v Schreiber, 250 AD2d 786, lv denied 92 NY2d 905). Further, the statement made by defendant to Officer Gomez while in transit to the 79th Precinct regarding the existence of other weapon-related contraband, was similarly voluntary and spontaneous (see id.). The subsequent brief questioning of defendant by the officers in the transport vehicle without Miranda rights being read was also wholly proper. At the scene, the officers recovered two guns from defendant's jacket pockets, and for safety concerns the police reasonably feared that a third weapon could have been similarly concealed on his person (see People v Ingram, 177 AD2d 650, appeal denied 79 NY2d 858; see also People v Taylor, 302 AD2d 868, lv denied 99 NY2d 658; People v Jenkins, 208 AD2d 459, appeal denied 85 NY2d 863).
As for the admissibility of defendant's statement made at the 79th Precinct, the record is clear [*4]that defendant answered in the affirmative as to whether he understood the Miranda Warnings read from a pre-printed document detailing the rights of a defendant in custody. Hence, under the totality of the circumstances, this Court finds that defendant knowingly, intelligently and voluntarily waived his Miranda rights before making the statement (see People v Washington, 155 AD2d 635, appeal denied 75 NY2d 925; see also People v Davis, 55 NY2d 731). Based upon the foregoing, the statements will not be suppressed.
Accordingly, defendant's motion to suppress is denied in its entirety.
This shall constitute the Decision and Order of the Court.

Decision Date: March 10, 2004