■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v DEVON WALLACE, Respondent. [933 NYS2d 13]—

On the morning of March 18, 2007, the operator of a stopped J train in the Gates Avenue station in Brooklyn was approached by a man on the platform he described as of "Indian" appearance. The man, who spoke quickly and appeared to be nervous, told the operator, who had almost 20 years of experience, that a black man in the first car of the train had a gun in a brown bag and was displaying it to people. The operator, while continuing the train run, used his radio to contact the police, but did not know whether his report had been heard.

Moments later, the man approached the station agent working in the toll booth at the Gates Avenue station and advised her that there was a man on the train wearing a brown shearling jacket who had a brown bag with a gun in it. The agent immediately hit the button on the Emergency Booth Communication System, causing a report to be sent to the police. Police Officer Isaac Garcia received a radio run about a "male black with a brown jacket, brown bag, with a firearm" located on the J train approaching the Essex Street station in Manhattan.

As the J train entered the Essex Street station, the operator stopped it and told a police officer that this was the train on which the armed man was riding. The officer, one of six present at the time, told the operator to pull up to the end of the station. Once the train stopped, the police, knowing that the man with a gun was in the first car, proceeded to remove two black males with brown jackets and put them against the wall. Officer Garcia then walked back into the train with his weapon drawn and, as he entered, he saw defendant standing in front of a group of mostly Asian females trying to get into the crowd.

Garcia and defendant made eye contact and Garcia raised and pointed his weapon at defendant. Garcia told defendant to get off the train, and a supervisor grabbed defendant and put him against the wall. Defendant did not obey the instructions, and Garcia unclipped a bag hanging from defendant's chest. The police found a loaded firearm in the bag.

After hearing testimony to the foregoing effect, Supreme Court granted defendant's motion to suppress the gun based on a finding that the police lacked reasonable suspicion to stop defendant. We reverse.

Upon receiving a report of a man with a gun in the first car of the J train, the police were duty-bound to take action (*People v Benjamin*, 51 NY2d 267, 270 [1980]). Even an anonymous telephone tip giving only a general description and the location of an individual with a gun permits a common-law inquiry by the police (*see People v Bora*, 191 AD2d 384, 385 [1993], *affd* 83 NY2d 531 [1994]; *People v Gaines*, 159 AD2d 175, 177 [1990]). However, "when the information provided by the tip is considered in conjunction with the attendant circumstances and exigencies, . . . more intrusive police action may be justified" (*Bora*, 191 AD2d at 385).

We agree with Supreme Court and defendant that the information furnished to the station agent did not, by itself, create reasonable suspicion. Nonetheless, and contrary to defendant's contention, *Florida v J.L.* (529 US 266 [2000]) is distinguishable in that, here, the informant imparted the information in a face-to-face encounter, thereby enhancing his reliability (*see People v Appice*, 1 AD3d 244 [2003], *lv denied* 1 NY3d 594 [2004]).

Nor does the fact that the information was imparted to a station agent or conductor mean that the informant should be regarded as anonymous within the meaning of *Florida v J.L.* As Supreme Court observed: "Station agents and train conductors are the natural point of contact for someone reporting an emergency situation in a subway car. And it seems likely that both train conductors and station agents are as able as police officers to make the kind of reliability assessment necessary to transmit this type of information to command central. Moreover, while it is possible to imagine any number of reasons why someone might make a false report to 911 or to a police officer to get someone in trouble, it is less likely that a live civilian—even if unidentified—would make this type of [false] report to a subway motorman or station agent."

In any event, the circumstances supported police action more intrusive than a mere common-law inquiry. The encounter oc-

curred, not on the street, but within the confines of a subway car, where defendant was trying to push his way into a group of people. This attempt, akin to an attempt to flee, by a person who met the description given to the police, elevated the situation to one of reasonable suspicion (*see People v Brown*, 216 AD2d 3 [1995]). Moreover, the potential danger to both the innocent bystanders and the police officer in the confined subway car was obvious.

Accordingly, we conclude that the police did not act unreasonably in removing defendant from the train for a pat down, considering the information imparted by the informant in a face-to-face meeting, the obvious concern the officer had for his own safety and that of the surrounding passengers, and defendant's attempt to push into the surrounding passengers after he made eye contact with the officer. It follows that the motion to suppress should have been denied. Concur—Friedman, J.P., Sweeny, DeGrasse, Abdus-Salaam and Román, JJ.